888 So.2d 96 (2004)
COMMUNICATIONS WORKERS OF AMERICA and LOCAL 3180 CWA, Appellants,
v.
INDIAN RIVER COUNTY SCHOOL BOARD, Appellee.
No. 4D03-3829.
District Court of Appeal of Florida, Fourth District.
November 24, 2004.
*97 Paul A. Donnelly and Laura A. Gross of Donnelly & Gross, P.A., Gainesville, for appellants.
John Edward Alley and Robert D. Hall, Jr., of Ford & Harrison LLP, Tampa, for appellee.
POLEN, J.
Appellant, Communications Workers of America, has timely appealed the trial court's order vacating an arbitration award, which interpreted section 447.4095, Florida Statutes, in its favor, on the basis that the arbitrator exceeded his powers under section 682.13(1), Florida Statutes. For the following reasons, we affirm.
The need for arbitration came about from a dispute regarding health care benefits provided to employees of the Indian River County School Board (School Board). There are about 600 blue and white collar non-instructional employees who are members of the Communications Workers of America (the Union). There is also a teachers union which was faced with the same issue regarding health care benefits, but the teachers union resolved its differences with the School Board and is thus not a party to this appeal. The Union and the School Board had a collective bargaining agreement which required good faith negotiations, provided that certain issues would be reconsidered each year, and permitted each side to identify up to two additional issues for reconsideration each year. Under this agreement, there was a provision for unspecified health insurance, the specifics of which are not particularly relevant. What is relevant is that the School Board became concerned that the health insurance plan, which had been running in deficits for many years, was in danger of becoming insolvent. The School Board approved health care modifications which would address this concern. The School Board notified the Union of the financial urgency, but the two sides failed to coordinate negotiations. The School Board sent a letter to PERC (Public Employees Relations Committee) declaring an impasse under section 447.403(4)(d), Florida Statutes (2001), on the issue of health insurance modifications, adding that "[d]ue to the time sensitivity of this item and due to its financial urgency, we would like to by-pass the special master proceedings."
*98 On April 27, 2001, the School Board met with both the Union and the teachers union to discuss the health insurance modifications. The School Board was able to reach a compromise with the teachers union. The School Board presented the Union with the teachers union's ratified compromise, but after negotiating, the two sides were unable to reach an agreement. The Union was advised that the School Board planned on implementing the proposed health insurance modifications if an agreement was not reached. A second negotiation session was held to no avail. The School Board declared an impasse and presented the Union with notice that it intended to skip mediation and a special master and proceed directly to a legislative hearing. The School Board also presented the Union with a letter addressed to PERC declaring an impasse under the financial emergency provisions of section 447.4095, Florida Statutes. The Union did not agree with this course of action, but chose not to file an unfair labor practice claim with PERC. On May 9, 2001, PERC's general counsel wrote the School Board, advising it:
I understand your concern over the "financial urgency" ... You [ ] are proceeding under Section 447.4095, Florida Statutes. This statutory section was enacted by the Legislature in 1997 and to date the Commission has not had an occasion to interpret its provisions in case law. My opinion of Section 447.4095 is that, in the event of a financial urgency requiring modification of a collective bargaining agreement, it allows an employer to unilaterally change wages, hours, and terms and conditions of employment after bargaining the impact of the change for a "reasonable period" not to exceed 14 days....
This case does not concern wages or hours and is therefore limited to the health insurance issue here. Accordingly, the School Board held the legislative hearing and implemented the changes it proposed, effective July 1, 2001.
On May 30, 2001, the Union filed a grievance alleging contract violations in regard to the unilateral imposition of the health insurance modifications. The School Board responded in a letter taking the position its action was authorized by section 447.4095 and that the Union did not grieve a violation under any of the contractual provisions. Though it came after the fact, a special master hearing was held resulting in a decision that issued no ruling and merely recommended methods to resolve the disagreement.
The parties proceeded to arbitration and the issues to be addressed by the arbitrator were (1) whether the grievance was arbitrable, and if so, (2) the merits of the grievance. The School Board took the position that an arbitrator may not determine matters pertaining to Ch. 447, Florida Statutes, and that such an issue is subject solely to the jurisdiction of PERC as an unfair labor practice charge for failure to bargain in good faith. Notwithstanding, the arbitrator found the issue arbitrable and that the School Board violated the agreement because the health care issues should have been raised at the annual renegotiations. Moreover, the Arbitrator ruled that the School Board did not follow the strictures of sections 447.403 and 447.4095, stating:
It would seem that the Employer, in order to avail itself of the statutory procedures must observe the strictures of those statutes. In this case the relevant statutes call for, inter alia, negotiation and a decision by a special master unless waived by the parties, prior to the imposition of a resolution by the legislative body, FS 447.403; 447.4095. However in this case the Board, without negotiation, *99 or waiver of the special master, imposed the resolution without a preceding special master decision as anticipated by the statutes. It seems to me that to accept as final the Board's action on October 30 would be to legitimize a resolution not contemplated by law.
Following this decision, the School Board moved to vacate the arbitration award on the grounds that the arbitrator exceeded his power and jurisdiction by ruling on preempted matters. See § 682.13(1)(c), Fla. Stat. After having heard the issues, the trial court found:
Much of the arbitrator's decision was devoted to interpretation and application of [§ 447.4095], as well as other statutes within the exclusive jurisdiction of [PERC]. His award was predicated on his interpretation of these statutes.... Because the Arbitrator exceeded his power and ruled upon matters arguably covered by Ch. 447, Part II, Florida Statutes, and within the exclusive, preemptive jurisdiction of PERC and upon matters which he was not empowered to decide pursuant to the collective bargaining agreement, the arbitration award must be vacated.
The Union timely appealed the trial court's Order vacating the arbitration decision.
"A very high degree of conclusiveness attaches to an arbitration award. Courts do not review findings of fact contained in an arbitration award or attempt to substitute their judgment for that of the arbitrator." Deen v. Oster, 814 So.2d 1065, 1068 (Fla. 4th DCA 2001) (citations omitted).
The reason for the high degree of conclusiveness [ ] is that the parties have by agreement substituted a tribunal of their own choosing for the one provided and established by law, to the end that the expense usually incurred by litigation may be avoided and the cause speedily and finally determined. To permit the dissatisfied party to set aside the award and invoke the judgment of the court upon the merits of the cause would be to render it merely a step in the settlement of the controversy, instead of a final determination of it.
Schnurmacher Holding, Inc. v. Noriega, 542 So.2d 1327, 1328-29 (Fla.1989). Notwithstanding, one basis for vacating an arbitration award is if "[t]he arbitrators or the umpire in the course of her or his jurisdiction exceeded their powers." Fla. Stat. § 682.13(1)(c).
"[A]n arbitrator exceeds his or her power [ ] when he or she goes beyond the authority granted by the parties or the operative documents and decides an issue not pertinent to the resolution of the issue submitted to arbitration." Schnurmacher, 542 So.2d at 1329.
[T]he award of arbitrators in statutory arbitration proceedings cannot be set aside for mere errors of judgment either as to the law or as to the facts; if the award is within the scope of the submission, and the arbitrators are not guilty of the acts of misconduct set forth in the statute, the award operates as a final and conclusive judgment.
Id. at 1328 (quoting Cassara v. Wofford, 55 So.2d 102, 105 (Fla.1951)). Likewise, "the fact that the relief was such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award." § 682.13(1)(e), Fla. Stat. The trial court's decision to confirm or vacate the arbitration award is reviewed for an abuse of extremely limited discretion. See Am. Reliance Ins. Co. v. Devecht, 820 So.2d 378, 379 (Fla. 3d DCA 2002); CAP Cons., Inc. v. TGSV Cons., Inc., 698 So.2d 1299, 1299 (Fla. 3d DCA 1997).
*100 Section 447.501(1)(c), Florida Statutes, defines, in relevant part, an unfair labor practice, which is covered by the act, as: "[r]efusing to bargain collectively, failing to bargain collectively in good faith." "A unilateral change in a term or condition of employment constitutes an unfair labor practice; an employee insurance program is such a term or condition of employment." City of Miami v. Fraternal Order of Police, Miami Lodge 20, 511 So.2d 549, 551 (Fla.1987). In Maxwell v. School Board of Broward County, 330 So.2d 177, 179-80 (Fla. 4th DCA 1976), this court stated:
One of the primary duties and responsibilities of the Public Employees Relations Commission (PERC) is to investigate and resolve charges of unfair labor practices, as defined under sec. 447.501, F.S.... From an analysis of its purpose and objectives and from a review of its provisions it appears that the legislature intended Part II, Chapter 447 to provide an exclusive method for resolving labor disputes between public employers and public employees, with the Public Employees Relations Commission having preemptive jurisdiction over such matters.... We, therefore, conclude that principles of preemption are applicable to the functioning of PERC; jurisdiction over labor activities is preempted in favor of PERC if the activities are `arguably' covered by the provisions of Part II, Chapter 447, supra.
Essentially, the School Board unilaterally modified the health insurance plan, in rough accordance with section 447.4095, due to perceived financial urgency after unsuccessful negotiations resulted in the declaration of an impasse. Section 447.4095 provides:
In the event of a financial urgency requiring modification of [a collective bargaining] agreement, the chief executive officer [ ] and the bargaining agent [ ] shall meet as soon as possible to negotiate the impact of the financial urgency. If after a reasonable period of negotiation which shall not exceed 14 days, a dispute exists between the public employer and the bargaining agent, an impasse shall be deemed to have occurred, and one of the parties shall so declare in writing to the other party and to the commission. The parties shall then proceed pursuant to the provisions of s. 447.403. An unfair labor practice charge shall not be filed during the 14 days during which negotiations are occurring pursuant to this section.
Notably, section 447.403 fails to ever mention submission to arbitration. The Union believes that the School Board violated the collective bargaining agreement by failing to properly follow the collective bargaining negotiation process. However, the agreement only required negotiations to be in good faith. The only other negotiation process which is in place is the statutory scheme under chapter 447. Likewise, the unilateral modification was pursuant to statutory law and not a breach of the agreement. Therefore, the arbitrator was preempted by PERC, which has exclusive jurisdiction over matters arguably covered under chapter 447. Moreover, in the course of the unsuccessful negotiations between the Union and the School Board, PERC's general counsel wrote the School Board, advising it that in his opinion the School Board was proceeding in accordance with section 447.4095. Notwithstanding, the arbitrator, while claiming to rule exclusively on the contractual provisions of the agreement, relied on and made numerous references to Chapter 447. As such, we find that the trial court was correct in vacating the arbitration award because the arbitrator exceeded his authority by addressing the manner in which the health insurance modifications were imposed, through the application of section 447.4095.
*101 The Union misplaces reliance on Chiles v. United Faculty of Florida, 615 So.2d 671, 673 (Fla.1993), which held that before any unilateral modification could be made under section 447.4095 the School Board had to demonstrate a compelling state interest. However, Chiles provides no indication that such a showing must be made before an arbitrator rather than before PERC. Needless to say, the future solvency of the employee's health insurance plan, assuming such a financial urgency exists, is surely a compelling interest. The Union also contends that it has a choice of remedies between contractual arbitration and an unfair labor practice charge before PERC. Contrarily, City of Miami, 511 So.2d at 553, in commenting on PERC's deferral to arbitration policy, held:
PERC's deferral policy does not "oust" the Commission of jurisdiction; PERC retains jurisdiction over the claim to ensure that the arbitrator's award actually resolved the issue, that the proceedings were fairly conducted, and the result reached was not repugnant to the act. It should also be noted that no party has a right to deferral; whether deferral is granted or not is a question of policy which the Commission decides. See Palm Beach County Ass'n of Firefighters, Local 1612 v. Palm Beach County, 9 F.P.E.R. ¶ 14128 (1983). The Commission has pointed out that deferral is granted rarely, and that in many cases where deferral is requested by one of the parties it is denied by PERC because of the possibility that the claims, although arguably covered by the parties' contract, also implicate various statutory and policy concerns.
Additionally, City of Miami relies on Manatee Education Association v. Manatee County School Board, 8 F.P.E.R. ¶ 13202 (1982), which held:
While an arbitrator may determine whether specific topics are encompassed by the reopener provision, it is not his province to determine whether the topics were within the statutory scope of bargaining, [ ] properly raised before the Special Master, or lawfully determined by the legislative body. Finally, the arbitrator lacks authority to determine whether the School Board's conduct constitutes a violation of Section 447.501(1)(a) and (c), Florida Statutes (1981). Such a determination depends upon the interpretation of the statutory bargaining obligation which is within the sole jurisdiction of the Commission.
Because PERC has preemptive authority, retains jurisdiction and has the exclusive decision-making power to defer to arbitration, the Union may not be permitted to bypass the jurisdiction of PERC by proceeding directly to arbitration. In light of Maxwell and City of Miami, the Union's complaint is "arguably" covered by the provisions of Part II, Chapter 447 and was subject to the exclusive jurisdiction of PERC, in the absence of any deferral by PERC. See Local Union No. 2135, Int'l Ass'n of Firefighters v. City of Ocala, 371 So.2d 583, 584-85 (Fla. 1st DCA 1979). Moreover, the fact that the School Board may not have followed the strictures of the statutory bargaining process does not divest PERC of exclusive jurisdiction. Finally, though we are mindful that the Union's statute of limitations has run for an unfair labor practice claim before PERC as to this set of facts, there may be subsequent events, beyond the scope of our record, which would enable the Union to seek the proper remedy before PERC.
AFFIRMED.
MAY, J., and GOLD, MARC H., Associate Judge, concur.