EMAS, J.
The American Federation of State, County, and Municipal Employees, Local 1184, AFL-CIO (“the Union”) appeals an order of final judgment which granted a motion for rehearing of an order vacating an arbitration award and confirming an arbitration award in favor of Miami-Dade County Public Schools (“the School Board”).
This case presents the following legal issue; Where a mutual mistake exists between the parties to an agreement, does reformation of that agreement constitute a “modification”? We answer that question in the negative and, for the reasons which follow, affirm the trial court’s order confirming an arbitration award in favor of the School Board.

FACTS AND OVERVIEW

When a dispute arose between the Union and the School Board over wages, the Union filed a grievance pursuant to Article VII of the parties’ Collective Bargaining Agreement (“CBA”), and the matter proceeded to arbitration. The Union claimed the School Board had refused to pay employees as set forth in the salary schedules attached to the CBA, and the School Board asserted that the salaries set forth in one of those schedules were incorrect due to a mutual mistake by both the Union *390 and the School Board. The Union argued that the mistake belonged solely to the School Board and sought a decision as to whether the School Board had violated the CBA by not paying in accordance with the salary schedule for two years, and if so, what was the proper remedy. The difference between the two schedules (the one bargained for vs. the one attached to the CBA) would have required the School Board to pay approximately $9 million more than it had budgeted for during the three-year period covered by the CBA.
The arbitrator found that, although the School Board was responsible for preparing the mistaken documents (the salary schedules attached to the CBA), the Union knew or should have known the salary schedules were grossly above what the parties had agreed to during bargaining, and accordingly, determined that the salary schedules should be reformed to reflect the actual intent of both parties.[1]
The Union filed in circuit court an application to vacate the arbitration award, asserting the arbitrator exceeded his jurisdiction under the express provisions of the CBA. Article VII, Section 4 of the CBA provides:
The arbitrator shall limit his/her decision to the application and interpretation of this Agreement and the arbitrator shall have no right to amend, modify, nullify, ignore, or add to the provisions of this Agreement.
The Union contended that, by effectuating a reformation, the arbitrator amended or modified the agreement, acting beyond the scope of his contractual authority and thus in excess of his jurisdiction. The School Board argued the arbitrator did not exceed his authority and acted within the proper course and execution of his duties, and that there was no basis to vacate the arbitration award. After a hearing, the trial court entered an order vacating the arbitration award, finding the arbitrator exceeded the scope of his contractual authority by reforming the CBA.
The School Board filed a motion for rehearing, arguing that reformation of a contract is not the same as amending or modifying the contract, and the arbitrator, having found the existence of a mutual mistake, simply determined the parties’ true intent under the CBA as reflected by the revised salary schedule executed on July 12, 2007.[2] The trial court granted the motion for rehearing, vacated its prior order, and confirmed the arbitration award. This appeal ensued. Because the issue presented is one of law, our standard of review is de novo. Regalado v. Cabezas, 959 So.2d 282 (Fla. 3d DCA 2007).

ANALYSIS

Arbitration awards are treated with a high degree of conclusiveness, and a court has extremely limited discretion to vacate an arbitration award. Commc’ns Workers of Am. v. Indian River Cnty. Sch. Bd., 888 So.2d 96 (Fla. 4th DCA 2004). To prevail on a motion to vacate an arbitration award, a party must establish one of the five grounds set forth in section 682.13(1), Florida Statutes (2007), which provides:
*391 (1) Upon application of a party, the court shall vacate an award when:
(a) The award was procured by corruption, fraud or other undue means.
(b) There was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or umpire or misconduct prejudicing the rights of any party.
(c) The arbitrators or the umpire in the course of her or his jurisdiction exceeded their powers.
(d) The arbitrators or the umpire in the course of her or his jurisdiction refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of s. 682.06, as to prejudice substantially the rights of a party.
(e) There was no agreement or provision for arbitration subject to this law, unless the matter was determined in proceedings under s. 682.03 and unless the party participated in the arbitration hearing without raising the objection.
“In the absence of one of the five factors set forth in the statute, neither a trial court nor a district court of appeal has the authority to overturn the award.” Schnurmacher Holding Inc. v. Noriega, 542 So.2d 1327, 1328 (Fla.1989). The Union contends that by “modifying” an agreement containing a no-modification clause, the arbitrator exceeded his powers in the course of his jurisdiction, thereby violating section 682.13(1)(c).
Thus the issue presented is whether, in light of the mutual mistake, the arbitrator’s reformation of the salary schedule constituted a modification prohibited under the terms of the CBA.
This case presents a classic example of a mutual mistake: “A mistake is mutual when the parties agree to one thing and then, due to either a scrivener’s error or inadvertence, express something different in the written instrument.” Providence Square Ass’n. v. Biancardi, 507 So.2d 1366, 1372 (Fla.1987); see also Blumberg v. Am. Fire & Cas. Co., 51 So.2d 182, 184 (Fla.1951); Fed. Ins. Co. v. Donovan Indus., Inc., 75 So.3d 812, 815 (Fla. 2d DCA 2011). When a mutual mistake exists, a reformation of the document is an appropriate remedy to ensure that it expresses the true intentions and agreement of the parties. Biancardi, 507 So.2d at 1369; Donovan, 75 So.3d at 815 (holding the undisputed facts supported reformation based on mutual mistake).
Although there appears to be no Florida case addressing this precise circumstance, the Florida Supreme Court has acknowledged generally that reformation of a written instrument “in no way alters the agreement of the parties. Instead the reformation only corrects the defective written instrument so that it accurately reflects the true terms of the agreement actually reached.” Biancardi, 507 So.2d at 1370 (citing Porter v. Meigs, 74 So.2d 82 (Fla.1954); S. Lead Corp. v. Glass, 103 Fla. 657, 138 So. 59 (1951); Smith v. Caravasios, 96 Fla. 219, 118 So. 10 (1928)); 9 Fla. Jur. 2d Cancellation § 53 (2012); 27 Williston on Contracts § 70.19 (4th ed.). See also In re Voca Corp., 99 Lab. Arb. Rep. (BNA) 345, 348 (1992) (Modjeska, Arb.) (holding “it has long been recognized that reformation of the agreement must be allowed if due to a mutual mistake the written agreement differs from the language agreed upon”); In re Food Emp’rs Council, Inc. & United Food & Comm. Workers Int’l Union, 87 Lab. Arb. Rep. (BNA) 514, 517 (1986) (Kaufman, Arb.) (noting “the Arbitrator’s function in re *392 forming an agreement is not to effect a change in the parties’ agreement but to give effect to the parties’ original intention”). In such cases, arbitrators have reformed contracts where, as typewritten, the contract did not reflect the actual agreement of the parties. See id. at 517 (noting “arbitrators have commonly awarded the remedy of reformation ... ‘upon a finding of mutual mistake’ ”).
As this Court observed in Kolski v. Kolski, 731 So.2d 169, 173 (Fla. 3d DCA 1999), reformation based upon mutual mistake “acts to correct an error not in the parties’ agreement but in the writing which constitutes the embodiment of that agreement.” (quoting Smith v. Royal Auto. Grp., Inc., 675 So.2d 144, 150 (Fla. 5th DCA 1996)).
We explained the purpose behind the remedy of reformation:
The underlying rationale is that in reforming the instrument the agreement of the parties is in no way altered but merely corrects the defect in the written document to reflect the true terms of the parties’ agreement.
Kolski, 731 So.2d at 173.
Where a mutual mistake results in a written document which differs from the terms the parties actually agreed upon, an arbitrator who reforms the instrument is merely acting to restore the parties’ true intent. In fact, one might cogently argue that the failure to reform the agreement in the undisputed presence of a mutual mistake would constitute a modification. If the arbitrator were to enforce the pay schedule mistakenly attached to the agreement, it would result in the School Board paying, and certain Union members receiving, nine million dollars more than the parties had indisputably agreed to. In the absence of a reformation, this mistaken pay schedule would itself constitute a modification of the parties’ true intent and agreement.[3]
We hold that the arbitrator’s reformation of the agreement, as expressed in the revised salary schedule, was not a modification of the CBA, and thus was not prohibited by the no-modification clause, because the revised pay schedule reflects exactly what the parties negotiated and agreed to in January 2007.
Affirmed.

. The arbitrator also determined that, after both parties became aware of the mistaken schedules, the Union’s representative and the School Board’s representative executed a revised salary schedule. However, this revised agreement, with the corrected schedule, was never ratified by the Union members.

. On appeal, the Union does not challenge the arbitrator’s findings that a mutual mistake occurred and that the revised salary schedule accurately represented the true agreement of the parties.

. The Union relies primarily on two cases. The first, Swepco Tube LLC v. Local 427 IUE-CWA, AFL-CIO, No. 07-cv-767 (PGS) 2008 WL 746670 (D.N.J. March 18, 2008), is an unpublished opinion and inapposite. The second, West Coast Telephone Co. v. Local Union No. 77, 431 F.2d 1219, 1221 (9th Cir.1970), addresses the same issue raised here. Although reaching a contrary conclusion, the opinion offers little analysis and is unpersuasive. We believe our holding reflects the more well-reasoned analysis.