615 So.2d 671 (1993)
Lawton CHILES, et al., Appellants,
v.
UNITED FACULTY OF FLORIDA, et al., Appellees.
No. 81252.
Supreme Court of Florida.
March 11, 1993.
On Motion for Clarification March 23, 1993.
*672 Robert A. Butterworth, Atty. Gen., and Kimberly J. Tucker, Deputy Gen. Counsel, Dept. of Legal Affairs, Tallahassee, for appellants.
Thomas W. Brooks of Meyer and Brooks, P.A., Tallahassee, for United Faculty of Florida, FTP-NEA.
Benjamin R. Patterson, III and Jerry G. Traynham of Patterson and Traynham, Tallahassee, for Florida Public Employees Council 79, AFSCME, et al.
Gene "Hal" Johnson, Tallahassee, for Florida Police Benevolent Ass'n.
Ronald G. Meyer of Meyer and Brooks, P.A., Tallahassee, for Federation of Physicians and Dentists, Nat. Union of Hosp. and Healthcare Employees.
KOGAN, Justice.
We have on appeal an order of the circuit court certified by the First District Court of Appeal as a matter of great public importance requiring immediate resolution by this Court. We have jurisdiction. Art. V, § 3(b)(5), Fla. Const.
The various Appellees are unions representing classes of public employees unable to resolve a collective bargaining process for pay and benefits during the fiscal year 1991-92. Pursuant to its statutory authority, the Legislature resolved the impasse by authorizing a three-percent pay raise to be effective January 1, 1992. Ch. 91-272, Laws of Fla. The unions ratified the raise.
Subsequently state officials projected a shortfall in public revenues. To meet the shortfall, the Legislature convened in special session in December 1991 and, among other measures, postponed the planned pay raises until February 15, 1992. Ch. 91-428, Laws of Fla. Later during the 1992 regular session, the Legislature responded to continuing revenue shortfalls by eliminating the pay raises altogether. Ch. 92-5, Laws of Fla.
The unions filed suit, and the trial court ruled in their favor. The court determined that the legislative actions here violated the right to collectively bargain and constituted an impermissible impairment of contract. Art. I, §§ 6, 10, Fla. Const. The state appealed, and the district court certified the case for our immediate review.
We begin by noting that the present case is factually quite different from our recent opinion in State v. Florida Police Benevolent Association, 613 So.2d 415 (Fla. 1992). There we dealt with a situation in which no final agreement had been reached between the parties, unlike here where an agreement was reached and funded, then unilaterally modified by the legislature, and finally unilaterally abrogated by the legislature. Accordingly, we do not believe that the result reached in Police Benevolent dictates the result here.
The state now argues that whatever agreement was reached between it and the unions somehow failed to reach the level of a fully enforceable contract. Indeed, the logical conclusion of the state's position is that public-employee bargaining agreements cannot ever constitute fully binding contracts, even after they are accepted and funded. We cannot accept this position.
Likewise we cannot accept the state's argument that the legislature is not a "party" to the contract and thus cannot be bound by the agreement after expressing legislative assent through the act of appropriating funds. The state itself clearly is a party to the contract, and the legislature is a constituent branch of the state. Once the executive has negotiated and the legislature has accepted and funded an agreement, the state and all its organs are *673 bound by that agreement under the principles of contract law. The act of funding through a valid appropriation is the point in time at which the contract comes into existence. Police Benevolent, 613 So.2d at 419, 419 n. 5.
These conclusions are compelled by the Florida Constitution. The right to contract is one of the most sacrosanct rights guaranteed by our fundamental law. It is expressly guaranteed by article I, section 10 of the Florida Constitution, and is equally enforceable in labor contracts by operation of article I, section 6 of the Florida Constitution. The legislature has only a very severely limited authority to change the law to eliminate a contractual obligation it has itself created. Art. I, § 10, Fla. Const. As we stated in Police Benevolent, 613 So.2d at 421,
[w]here the legislature provides enough money to implement the benefit as negotiated, but attempts to unilaterally change the benefit, the changes will not be upheld, and the negotiated benefit will be enforced.
We recognize that in the sensitive area of a continuing appropriation obligation for salaries and perhaps in other contexts as well, the legislature must be given some leeway to deal with bona fide emergencies. Accordingly, we agree with the trial court that the legislature has authority to reduce previously approved appropriations to pay public workers' salaries made pursuant to a collective bargaining agreement, but only where it can demonstrate a compelling state interest. Art. I, §§ 6, 10, Fla. Const.; Hillsborough County Governmental Employees Ass'n, Inc. v. Hillsborough County Aviation Authority, 522 So.2d 358 (Fla. 1988).
Before that authority can be exercised, however, the legislature must demonstrate no other reasonable alternative means of preserving its contract with public workers, either in whole or in part. The mere fact that it is politically more expedient to eliminate all or part of the contracted funds is not in itself a compelling reason. Rather, the legislature must demonstrate that the funds are available from no other possible reasonable source. Accord United States Trust Co. v. New Jersey, 431 U.S. 1, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977); Association of Surrogates and Supreme Court Reporters v. New York, 940 F.2d 766 (2d Cir.1991); Sonoma County Organization of Public Employees v. County of Sonoma, 23 Cal.3d 296, 152 Cal. Rptr. 903, 591 P.2d 1 (1979). That has not happened here.
We do not agree that the savings clauses in the contracts are sufficient to nullify them. The savings clauses clearly were meant as a means of preserving the contracts in the event of partial invalidity; they are not an escape hatch for the legislature. Indeed, were we to accept the state's position on this point, we necessarily would be required to conclude that there was no contract here at all for lack of mutuality because one party could nullify the agreement at any time, and for any reason. Obviously the parties intended there to be a contract, and we will construe the provisions so as to achieve that result.
Finally, we are not today revisiting or modifying our opinion in Chiles v. Children A, B, C, D, E, & F, 589 So.2d 260 (Fla. 1991), where we reaffirmed Florida's strong separation of powers doctrine. The present case does not itself present a violation of separation of powers, nor are we attempting a judicial appropriation of public money. Here, the legislature acted pursuant to its powers, appropriated funds for collective bargaining agreements, and thereby created a binding contract. Having exercised its appropriation powers, the legislature cannot now change its mind and renege on the contract so created without sufficient reason. Separation of powers does not allow the unilateral and unjustified legislative abrogation of a valid contract.
Accordingly, we affirm the order of the trial court below based on article I, sections 6 and 10 of the Florida Constitution, and the Appellants are hereby directed to adjust the pay and pay records of all employees covered by the collective bargaining agreements that are the subject of this opinion, and to otherwise take necessary *674 steps to implement the pay raise covered by this opinion retroactive to January 1, 1992, as required by chapter 91-272, section 5, Laws of Florida.[1]
It is so ordered.
BARKETT, C.J., and SHAW, J., concur.
GRIMES and HARDING, JJ., concur with an opinion, in which BARKETT, C.J., concurs.
OVERTON, J., dissents with an opinion.
McDONALD, J., dissents with an opinion, in which OVERTON, J., concurs.
GRIMES, Justice, concurring.
There is no doubt that the shortfall in projected state revenue which was then approaching $700 million required drastic legislative action in order to balance the budget. However, because the state had contracted for the public workers' pay raise, I believe that the legislature was required first to make other reasonable reductions in appropriations or seek other reasonable sources of revenue. Given the fact that the total annual state budget exceeded $28 billion, I cannot say that the legislature had a sufficiently compelling state interest to repudiate the contract by eliminating the $35.4 million necessary to fund the pay raise.
BARKETT, C.J., concurs.
HARDING, Justice, concurring.
I concur with the majority in affirming the order of the trial court below. I find that the legislature acted in violation of article I, sections 6 and 10 of the Florida Constitution when it rescinded the three-percent pay raise which it had previously authorized.
I agree with the majority that State v. Florida Police Benevolent Association, 613 So.2d 415 (Fla. 1992), is not applicable to this case. In Police Benevolent, the governor entered into collective bargaining agreements with several unions. However, the legislature altered those agreements in its general appropriations act. This Court found that "[w]here the legislature does not appropriate enough money to fund a negotiated benefit, as it is free to do, then the conditions it imposes on the use of the funds will stand even if contradictory to the negotiated agreement." Id. at 421.
In contrast, the instant case did not involve a negotiated agreement because the governor and the unions reached an impasse. Pursuant to section 447.403(4)(d), Florida Statutes (1991), the legislature resolved the impasse by authorizing a three-percent pay raise, which the unions subsequently ratified. The legislature's funding of this pay raise created a valid contract between the state and the unions. The legislature's subsequent attempt to rescind the pay raise, absent a showing of a compelling state interest, violated both the right to contract and the right to bargain collectively.
BARKETT, C.J., concurs.
OVERTON, Justice, dissenting.
I dissent and fully agree with the analysis and reasoning of Justice McDonald's dissent. I write only to express my deep concern regarding the majority's elimination of the critical power of the legislature to make difficult choices in the face of a revenue shortfall in this state.
Contrary to the majority's conclusion, in my view, when a budget shortfall is so great that a revenue crisis occurs and the Governor is required to call a special session to balance the state's budget, clearly a compelling state interest exists. Once that occurs, every item in the appropriations bill should be "back on the table," and the legislature, through its exclusive authority to grant appropriations, should be the sole entity to determine what items must be cut to constitutionally balance the budget.
In his concurrence, Justice Grimes appears to state that a compelling state interest in cutting the raise has not been justified *675 because an almost $700 million shortfall is not significant given the overall size of the $28 billion budget. At first glance, such a position appears to be reasonable. However, once the budget is analyzed, it becomes obvious that a substantial part of our budget is composed of federal funds and trust funds for transportation and education that are specifically allocated in part by federal law. Consequently, a $700 million shortfall is significant and substantial when one considers how little of that $28 billion is actually "on the table" for the legislature to cut. Consider, for instance, that the $700 million shortfall was more than three times the total judicial budget for the fiscal year in question.
Moreover, it appears that by this lawsuit state employees have won the battle but could well lose the war. Before this decision, the legislature had a choice in tough fiscal times of eliminating the pay raises or eliminating jobs. Henceforth, however, once state employee pay raises have been agreed upon and appropriated and a revenue shortfall subsequently occurs, the legislature's sole choice will be the elimination of state jobs. Ironically, the majority's opinion will allow the legislature to eliminate those jobs but will not allow it to eliminate pay raises that have not even gone into effect for those jobs.
When initially faced with this revenue shortfall, the Governor and Cabinet, thinking they had the authority to do so, made the necessary cuts and determined not to eliminate the pay raises but instead, in making the difficult reduction choices, to eliminate programs for children and education. These cuts resulted in the action we resolved in Chiles v. Children A, B, C, D, E, & F, 589 So.2d 260 (Fla. 1991), in which we said that the reduction choices were solely within the exclusive authority of the legislature. As noted in my concurrence to that opinion:
The extent of the Governor's and Cabinet's legislative policy-making authority granted by section 216.221(2) is illustrated by the total elimination of funds appropriated by the legislature for emergency housing for homeless families with children, as well as the elimination of a special appropriation for additional aid to dependent children.
589 So.2d at 269 (Overton, J., concurring). Subsequently, once the difficult budget reduction choices were taken from the Governor and Cabinet and placed within the discretion of the legislature, the legislature exercised its authority and determined that the programs for children and education were more important than the state employee raises. Consequently, it kept those funds in the budget and eliminated the pay raises. The majority, in effect, is now saying that the legislature could properly cut programs for children and education but could not cut the pay raises, even though funds for all of those expenses were approved and enacted in the same appropriations bill.
Neither section 6 nor section 10 of article I of the Florida Constitution was intended to alter or restrict the fundamental constitutional power of the legislature to make difficult economic choices in the face of an economic crisis and resulting revenue shortfall. This Court has no authority whatsoever, nor should it have, to substitute its judgment for that of the legislature in this regard.
McDONALD, Justice, dissenting.
I dissent.
Although private employees have long had the right to bargain collectively, public employees have not. E.g., City of Springfield v. Clouse, 356 Mo. 1239, 206 S.W.2d 539 (1947). Indeed, the right of Florida's public employees to engage in collective bargaining has been recognized for only two decades. In Dade County Classroom Teachers' Association, Inc. v. Ryan, 225 So.2d 903, 905 (Fla. 1969), this Court held "that with the exception of the right to strike, public employees have the same rights of collective bargaining as are granted private employees." This holding does not mean, however, that there are no differences between public and private employee bargaining. State v. Florida Police Benevolent Ass'n, Inc., 613 So.2d 415 (Fla. 1992); United Teachers v. Dade County *676 School Board, 500 So.2d 508 (Fla. 1986). Article I, section 6 was "not intended to alter fundamental constitutional principles, such as the separation of powers doctrine" and does not "give to public employees the same rights as private employees to require the expenditure of funds to implement the negotiated agreement." Florida PBA, 613 So.2d at 419. Also, legislative enactments regulating collective bargaining by public employees should be accorded great deference. Dade County Classroom Teachers'.
The subject of wages is one area where there are major differences between the public and private sectors. In dealing with public, rather than private, employees "[w]ages are a legislative matter, and only bargainable to a limited degree." Daniel P. Sullivan, Public Employee Labor Law § 11.11, at 75 (1969). As noted by the Second District Court of Appeal, "a wage agreement with a public employer is obviously subject to the necessary public funding which, in turn, necessarily involves the powers, duties and discretion vested in those public officials responsible for the budgetary and fiscal processes inherent in government." Pinellas County Police Benevolent Ass'n v. Hillsborough County Aviation Authority, 347 So.2d 801, 803 (Fla. 2d DCA 1977). Based on the doctrine of separation of powers, this Court has long recognized that "the power to appropriate state funds is legislative and is to be exercised only through duly enacted statutes." Chiles v. Children A, B, C, D, E, & F, 589 So.2d 260, 265 (Fla. 1991).
Appropriating state funds is "the exclusive constitutional prerogative of the Legislature." United Faculty of Florida v. Board of Regents, 365 So.2d 1073, 1074 (Fla. 1st DCA 1979). Moreover, "the power to reduce appropriations, like any other lawmaking, is a legislative function." Chiles v. Children, 589 So.2d at 265 (emphasis in original). Collective bargaining agreements are subject to the legislature's power to appropriate, and the agreements themselves recognize this limitation.[2]Florida PBA; United Faculty. Thus, "the legislature's exclusive control over public funds," Florida PBA, 613 So.2d at 420, "is not an abridgment of the right to bargain, but an inherent limitation" on that right. Id. at 419 n. 6, 421 n. 10.
We recently stated: "Where the legislature provides enough money to implement the benefit as negotiated, but attempts to unilaterally change the benefit, the changes will not be upheld, and the negotiated benefit will be enforced." Id. at 421 (footnote omitted). The unions argue that, because the collective bargaining agreements had been ratified by their members, those agreements were contracts that could not be modified unilaterally by the legislature. Therefore, the unions contend that the raises could not be altered by the legislature. Because several billion dollars had been appropriated, the unions argue that the pay raises should not have been rescinded. Instead, they argue the legislature should have raised more revenue by raising taxes or should have decreased spending by cutting any appropriations other than those made to fund the bargaining agreements. This argument, however, ignores the conclusion in Florida PBA that "should the legislature be able to show a compelling state interest justifying the abridgment of the right to collectively bargain, its unilateral changes would be enforced." Id. at 421, n. 11.[3]
Florida's Constitution requires that the state operate under a balanced budget.[4] "It is the duty of the Governor, as chief budget officer, to ensure that revenues collected will be sufficient to meet the appropriations *677 and that no deficit occurs in any state fund." § 216.221(1), Fla. Stat. (Supp. 1992).[5] When the governor certifies that a shortfall in revenues has caused a fiscal emergency, a compelling state interest, i.e., the necessity of a balanced state budget, exists.
The necessity for a balanced budget is at the heart of the legislature's power to appropriate. The legislature represents the people and speaks with the voice of all the people. Thus,
only the legislature, as the voice of the people, may determine and weigh the multitude of needs and fiscal priorities of the State of Florida. The legislature must carry out its constitutional duty to establish fiscal priorities in light of the financial resources it has provided.
Chiles v. Children, 589 So.2d at 267. When the three-percent pay raise was appropriated projected revenues were adequate to fund all sums appropriated. Actual revenues received proved this to be substantially wrong and dramatic changes in the entire appropriations were required. The three-percent pay raise, along with many other appropriations, was cut in an effort to balance the budget.
Laws must be made by the legislature, not through bargaining by anyone outside the legislature. Agreeing with the unions' argument that sufficient moneys had been appropriated to cover the pay raises even after the $600 million had been cut from the budget because contracts are involved guts the legislature's power over appropriations. Acceding to the unions' demand in this case would mean that any contract entered into by the state  for purchases, for rent, for collective bargaining  would take precedence in the state budget over any program the legislature might wish to implement.
No citizen or group of citizens has a right to a contract for any legislation. The legislature must speak through laws that are binding on all the people, not through contracts that bind only the parties to them. Legislative power cannot be delegated, Chiles v. Children, nor can the legislature's power and discretion "be bargained away." Florida PBA, 613 So.2d at 418. Thus, the legislature has discretion "either to reduce the appropriations or to raise `sufficient revenue' to satisfy the appropriations it deems necessary to run the government." Chiles v. Children, 589 So.2d at 267. Without the power to cut the specific appropriations it finds necessary, the legislature loses its role as the voice of the people.
An unanticipated revenue shortfall befell the state. The legislature had not only the right, but the constitutional duty to review all of its appropriations. Because of the substantial change in the financial conditions of this state, contractual employee obligations were subject to modification along with other budgeted items. I believe the legislature, in such circumstances, has the unrestricted power to meet the compelling state interest of a balanced budget by reducing whatever appropriations it deems advisable.[6]
OVERTON, J., concurs.

ON MOTION FOR CLARIFICATION
PER CURIAM.
The State asks that we clarify our opinion with reference to the period of time during which the pay raises will be effective and the availability of interest on amounts wrongfully withheld from employees. As we noted in the majority opinion, the legislature is a constituent element of the state, which is itself bound by the contracts negotiated with employees once *678 those contracts are accepted and funded. Accordingly, the legislature is bound by its contract as would be any private employer.
However, the legislature's legal obligation terminated on June 30, 1992, as counsel for the unions conceded in oral argument. We therefore are of the opinion that the legislature was under no legal obligation to provide the same level of funding beyond that date. It is clear to us that the legislature has authority to reduce base salaries as it deems appropriate, subject however to the terms of any contracts it has entered with its employees.[1] Because the legislature chose not to fund the raise the second year it effectively assented only to a three-percent raise ending June 30, 1992; there was nothing to require the state to extend the three-percent increase beyond that date.[2]
Finally, we recognize that elsewhere we have held that an award of interest may be appropriate in suits by public employees based on violation of a contract with a public employer. Broward County v. Finlayson, 555 So.2d 1211 (Fla. 1990). However, the Finlayson case involved failure to compensate for overtime hours worked by a small group of emergency medical technicians, not a question of base pay owed to unionized employees. We also stressed in Finlayson that an award of interest in this context depends heavily on equitable considerations. Id. at 1213. In light of the unique circumstances here, we find that equity favors the State. The legislature is free to award interest if it so chooses, but equity will not require it to do so.
It is so ordered.
BARKETT, C.J., and GRIMES and HARDING, JJ., concur.
McDONALD, J., concurs specially with an opinion, in which OVERTON, J., concurs.
SHAW, J., concurs in part and dissents in part with an opinion, in which KOGAN, J., concurs.
NO MOTION FOR REHEARING WILL BE ALLOWED.
McDONALD, Justice, specially concurring on motion for clarification.
While I adhere to my original dissent, I agree that if the respondents were entitled to a three percent pay raise, it was limited to the period of January 1, 1992 through June 30, 1992. There was no legal requirement to continue the pay raise thereafter.
The state is not obligated to pay interest. Flack v. Graham, 461 So.2d 82 (Fla. 1984). On this issue I also adhere to my dissent in Broward County v. Finlayson, 555 So.2d 1211 (Fla. 1990).
OVERTON, J., concurs.
SHAW, Justice, concurring in part, dissenting in part.
I disagree with the majority's determination that state workers are not entitled to prejudgment interest on their back pay. This Court's own precedent favors payment.
Initially, we have held that no special immunity insulates the State from liability on its contractual obligations:
Where the legislature has, by general law, authorized entities of the state to enter into contract or to undertake those activities which, as a matter of practicality, require entering into contract, the legislature has clearly intended that such contracts be valid and binding on both parties. As a matter of law, the state must be obligated to the private citizen or the legislative authorization for such action is void and meaningless. We therefore hold that where the state has entered into a contract fairly authorized by the powers granted by general law, the defense of sovereign immunity will *679 not protect the state from action arising from the state's breach of that contract.
Pan-Am Tobacco Corp. v. Department of Corrections, 471 So.2d 4, 5 (Fla. 1984). Once the State enters the arena of formal contracts, it waives any right to special treatment when it reneges on its promises. As a rule, the State has the same responsibility as any private party to honor its word in a contractual setting.
As to the specific matter of prejudgment interest, this Court summarized the applicable law in Broward County v. Finlayson, 555 So.2d 1211 (Fla. 1990):
In Kissimmee Utility Authority v. Better Plastics, Inc., 526 So.2d 46 (Fla. 1988), we reaffirmed our decision in Argonaut Insurance Co. v. May Plumbing Co., 474 So.2d 212 (Fla. 1985), and stated the general rule concerning the payment of prejudgment interest: "Once damages are liquidated, the prejudgment interest is considered an element of those damages as a matter of law, and the plaintiff is to be made whole from the date of the loss." This general rule is not absolute. In Flack v. Graham, 461 So.2d 82 (Fla. 1984), we refused to permit recovery of any prejudgment interest, stating: "[I]nterest is not recovered according to a rigid theory of compensation for money withheld, but is given in response to considerations of fairness. It is denied when its exaction would be inequitable."
Finlayson, 555 So.2d at 1213 (citations omitted). This Court has applied this rule in a number of recent cases, approving the awarding of prejudgment interest in most instances.[3] The prime case wherein we denied prejudgment interest[4] did not involve a contract dispute, as does the present case, but rather posed a "[choice] between innocent victims." Flack v. Graham, 461 So.2d 82, 84 (Fla. 1984).
Equity, in my opinion, requires payment of interest in the present case  there simply are not two innocent victims here. When the State entered into its formal contractual agreement with the state workers' unions to provide a raise, it assumed the same responsibility to honor its word that any private party would have. When equitable principles are factored in, the State's obligation was clearly as great as that of the union. The State, as opposed to many private parties, is a highly sophisticated bargaining entity with vast practical experience and nearly limitless technical resources at its disposal to facilitate it in the decisionmaking process. When the State knowingly and deliberately broke its word in the present case, it did so based on grounds that this Court has found unacceptable. Additionally, I note that adequate cuts could have been made in alternative areas where the State had not already formally and legally bound itself. Equity, to my mind, unquestionably lies with the innocent victim here  the state workers  who should be made whole for their losses.
I concur in the remainder of the majority opinion.
KOGAN, J., concurs.
NOTES
[1] The legislative ratification pertained only to the 1991-92 fiscal year. Therefore, the pay raise ordered by this opinion covers only the six-month period from January 1, 1992 to June 30, 1992.
[2] The savings clauses in the instant agreements recognize the legislature's ultimate control over the bargaining process.
[3] Ordinarily, an exercise of the appropriation power, i.e., funding a wage increase, is not an abridgment of the right to bargain. State v. Florida Police Benevolent Ass'n, Inc., 613 So.2d 415, 419 n. 6. Moreover, the legislature's failure "to appropriate funds sufficient to fund the collective bargaining agreement shall not constitute, or be evidence of, any unfair labor practice." § 447.309(2), Fla. Stat. (1989).
[4] Article VII, section 1(d), Florida Constitution, states: "Provision shall be made by law for raising sufficient revenue to defray the expenses of the state for each fiscal period."
[5] After this Court declared subsection 216.221(2), Florida Statutes (1989), unconstitutional in Chiles v. Children A, B, C, D, E, & F, 589 So.2d 260 (Fla. 1991), the legislature amended section 216.221. Ch. 92-142, § 64, Laws of Fla. The governor's duty regarding a balanced budget is the same now as in the previous version of the statute.
[6] Notwithstanding what is said in the majority opinion, it appears to me that its decision has abrogated the separation of powers doctrine. It has clearly substituted its judgment for that of the legislature when it holds that inadequate reasons existed to cancel the pay raises.
[1] The cases cited by the unions are readily distinguishable, because they deal with illegal or improper acts against individual employees, e.g., Flack v. Graham, 461 So.2d 82 (Fla. 1984), or unfair labor practices. E.g., Town of Pembroke Park v. State ex rel. Healy, 446 So.2d 198 (Fla. 4th DCA 1984). The present case deals with actions taken toward state employees as a whole that impaired a contract but obviously did not constitute an unfair labor practice.
[2] § 447.309(2), Fla. Stat. (1991).
[3] See, e.g., Broward County v. Finlayson, 555 So.2d 1211 (Fla. 1990) (prejudgment interest awarded to emergency medical technicians against county for overtime back pay); Kissimmee Utility Auth. v. Better Plastics, Inc., 526 So.2d 46 (Fla. 1988) (prejudgment interest awarded to utility customer against public utility for rate overcharge); Argonaut Ins. Co. v. May Plumbing Co., 474 So.2d 212 (Fla. 1985) (prejudgment interest awarded to victim's insurance carrier against tortfeasor's carrier on judgment of damages).
[4] Flack v. Graham, 461 So.2d 82 (Fla. 1984) (prejudgment interest denied to county judge against comptroller for back pay).