672 So.2d 571 (1996)
COASTAL PETROLEUM COMPANY and Almeria T. Cottingham, Anne M. Clark, Helen T. Kerr, Hugh C. MacFarlane, William W. Arnold and Charles E. Arnold, Appellants,
v.
Lawton CHILES, Governor, et al., as and constituting the Board of Trustees of the Internal Improvement Trust Fund of Florida; and the Department of Environmental Protection, Appellees.
Nos. 95-2225, 95-2628.
District Court of Appeal of Florida, First District.
April 4, 1996.
*572 Robert J. Angerer and Robert J. Angerer, Jr. of Angerer and Angerer, Tallahassee, for Appellant Coastal Petroleum Company; John K. Aurell of MacFarlane, Ausley, Ferguson & McMullen, Tallahassee, and Charles W. Pittman and Susan W. Fox of MacFarlane, Ausley, Ferguson & McMullen, Tampa, for Appellants Almeria T. Cottingham, Anne M. Clark, Helen T. Kerr, Hugh C. MacFarlane, William W. Arnold, and Charles E. Arnold.
Robert A. Butterworth, Attorney General, and Denis Dean, Assistant Attorney General, Tallahassee, for Appellees.
ALLEN, Judge.
Coastal Petroleum Company (Coastal) and other interested persons appeal from final orders of the appellee Board of Trustees of the Internal Improvement Trust Fund (the trustees) whereby the trustees relied upon section 253.571, Florida Statutes, in requiring a surety bond as a condition precedent to Coastal's drilling for oil and gas. Because the trustees' retroactive application of the statute to a preexisting oil and gas lease impairs obligations under the preexisting lease contract, we conclude that it contravenes article I, section 10 of the state constitution. Accordingly, we set aside the final orders.
Pursuant to an oil and gas lease executed in the 1940's and a settlement agreement executed in 1976 between Coastal and the State of Florida, Coastal has the exclusive right to explore for and produce oil and gas from certain submerged sovereignty lands in the Gulf of Mexico. In Coastal Petroleum Co. v. State Department of Environmental Protection, 649 So.2d 930 (Fla. 1st DCA 1995), we held that the Department of Environmental Protection lacked authority to require security in addition to Coastal's payment of an annual fee pursuant to section 377.2425, Florida Statutes, as a condition precedent to granting Coastal's application for a permit to drill an oil and gas exploration well upon the leased lands. Subsequent to that decision, the trustees relied upon section 253.571 in ordering that Coastal would be required to post a $500 million bond as a further condition precedent to any drilling upon the leased lands. The trustees then reconsidered the issue and voted to raise the bond requirement to $1.9 billion. The two orders have been consolidated for this appeal.
Section 253.571 authorizes the trustees to require a bond from each lessee of public land prior to the lessee's drilling for oil or gas upon leased lands. But Coastal contends that application of the statute to its lease constitutes an impairment of the obligation of contract, contrary to article I, section 10 of the state constitution, because its lease was executed in the 1940's and section 253.571 was not enacted until 1969. Relying upon cases such as State v. Leavins, 599 So.2d 1326, 1331-32 (Fla. 1st DCA 1992), Coastal argues that the statute cannot apply retroactively to impose a substantial condition not contained in the preexisting lease contract. The trustees offer several arguments for their contention that the lease is subject to the bond requirement of the statute.
The trustees first rely upon the following language in the 1976 settlement agreement to argue that Coastal subjected itself to section 253.571:
Coastal shall secure permits from all appropriate State environmental protection agencies in compliance with the then existing laws and regulations, prior to any drilling or mining.
This provision, which by its unambiguous language applies to the laws and regulations *573 pertaining to the permitting process, does not aid the trustees in this case because the trustees, by their own concession, are not a permitting agency. Furthermore, another part of the settlement agreement states:
The Trustees agree that drilling obligations... shall be governed by Chapter 20680, Laws of Florida, Acts of 1941, and that all further drilling requirements are hereby waived.
This language expressly waived any right of the trustees to assert drilling requirements not specified in the referenced statutes.
Alternatively, the trustees suggested for the first time at oral argument that they had the authority to impose the bond requirement because section 253.571 is merely a continuation of the trustees' broad authority pursuant to section 253.04, Florida Statutes (1941), which provides that the trustees may "take such other action or do such other things as may in the judgment of the said trustees be necessary for the full protection and conservation of the said lands." We do not read section 253.04, which recites the general duty of the trustees to protect state lands, as providing the trustees with broad discretion to rewrite legally binding state contracts. We therefore cannot agree that section 253.04 provides a valid basis for the trustees' actions in this case.
Finally, the trustees argue that even if they were without authority to impose the bond under the terms of the lease, section 253.571 does not unconstitutionally impair the obligation of contract under the federal constitutional analysis set forth by the United States Supreme Court in Energy Reserves Group, Inc. v. The Kansas Power & Light Co., 459 U.S. 400, 103 S.Ct. 697, 74 L.Ed.2d 569 (1983). However, Energy Reserves Group is unavailing to the trustees because there the state was not one of the contracting parties. As the Supreme Court in that case recognized:
When a State itself enters into a contract, it cannot simply walk away from its financial obligations. In almost every case, the Court has held a governmental unit to its contractual obligations when it enters financial or other markets.
459 U.S. at 413 n. 14, 103 S.Ct. at 705 n. 14. (citations omitted); see United States Trust Co. v. New Jersey, 431 U.S. 1, 97 S.Ct. 1505, 52 L.E.2d 92 (1977).
Likewise, under the contracts clause of our state constitution, little tolerance has been shown for the state's attempts to alter its own contracts. For example, in Chiles v. United Faculty of Florida, 615 So.2d 671 (Fla.1993), an agreement for pay raises for state workers was reached and initially funded by the legislature. When a shortfall in projected revenue required legislative action to balance the budget, the legislature attempted to postpone the raise. The supreme court held this action violated article 1, section 10, explaining:
The right to contract is one of the most sacrosanct rights guaranteed by our fundamental law. It is expressly guaranteed by article 1, section 10 of the Florida Constitution.... The legislature has only a very severely limited authority to change the law to eliminate a contractual obligation it has itself created.
Id. at 673. While recognizing that the legislature has authority to reduce previously approved appropriations where it can demonstrate a compelling state interest, the court emphasized:
Before that authority can be exercised, however, the legislature must demonstrate no other reasonable alternative means of preserving its contract with public workers, either in whole or in part.
Id. The court concluded that the state had not met that burden where it had not demonstrated that the funds were unavailable from other possible reasonable sources.
Similarly, the trustees here have failed to demonstrate that imposing the bond at issue is the only means available to protect the state lands, particularly in light of the existing surety requirements of section 377.2425, Florida Statutes, and Coastal's agreement in the lease contract to assume "responsibility for all damages caused by [its] operations." Accordingly, we must conclude that the $1.9 billion bond requirement would substantially *574 impair the obligation of the lease contract in violation of article I, section 10.
The final orders are set aside.
BARFIELD and KAHN, JJ., concur.