CONNER, J.
The constitutional right of public employees to collectively bargain with their employer and the interrelated constitutional right of a bargaining unit to be free from governmental impairment of contracts with its employer are the heart of this appeal. Hollywood Fire Fighters Local 1375 (“the Union”) argues that the Public Employees Relations Commission’s (“PERC”) interpretation of section 447.4095(1), Florida Statutes (2013), which permits local governments to declare a “financial urgency” to reopen a collective bargaining agreement, violates these two constitutional rights. We disagree with the First District’s decision in Headley v. City of Miami, 118 So.3d 885 (Fla. 1st DCA 2013), which considered the same issues raised in this case, and reverse PERC’s dismissal of the Union’s unfair labor practice claim against the City of Hollywood (“the City”). We also certify conflict with Headley.

Factual Background

The Union is the bargaining unit that represents non-managerial firefighters employed by the City. The City and the Union are parties to a collective bargaining agreement (“CBA”); the one at issue in this ease took effect on October 1, 2009 and expired on September 30, 2012.
In early 2011, the City became aware that due to declining revenues, there would be a general fund shortfall of about $8.6 million for Fiscal Year 2011 (“FY2011”) and a $25 million shortfall for Fiscal Year 2012 (“FY2012”). The City implemented some measures to address the mid-year shortfall, including cutting operating expenses, deferring most capital improvement projects, and asking vendors to lower their prices. This did not result in enough savings; therefore, on May 18, 2011, the City Commission declared financial urgency for both FY2011 and FY2012. It adopted a separate resolution for each of those fiscal years, but at the time, it had not finalized its budget or adopted its millage rate for FY2012.
Representatives of the City and Union met on June 3, 2011 to bargain over the impact of the financial urgency for FY2011. The Union met with the City under protest. The City made proposals to reduce wages and overtime and increase the length of the workweek for FY2011. The Union proposed layoffs and tax increases. The City estimated it would have to lay off forty-six firefighters to resolve the shortfall for FY2011, as taxes could not be raised mid-fiscal year. Layoffs of that magnitude would result in a 50% reduction in service.
The City declared an impasse on June 10, 2011, and at a City Commission meeting on June 13, 2011, unilaterally imposed the wage and workweek changes proposed for FY2011. The following day, the City asked PERC to appoint a special magistrate to resolve the impasse. The Union informed the magistrate that it would not participate in any special magistrate proceedings.
The City and Union met on July 25, 2011 to bargain over the impact of the financial urgency for FY2012. The City presented a proposal for $5.3 million in reductions. In addition to the FY2011 changes, the City sought health insurance and pension reductions. The Union filed an unfair labor practice charge as to both FY2011 and FY2012 before any impasse was declared for FY2012.

Proceedings before the Public Employees Relations Commission

The Union alleged that the City committed unfair labor practices by (1) declaring *1044 a financial urgency for both FY2011 and FY2012 when none existed; (2) failing to participate in impasse proceedings before declaring financial urgency for FY2011; and (3) bargaining in bad faith. The Union also argued section 447.4095 (“the financial urgency statute”) was unconstitutional. An evidentiary hearing was held before a PERC hearing officer. The hearing officer, after making extensive factual determinations and conclusions of law, recommended the Union’s unfair labor practice charges be dismissed.[1] Both sides filed exceptions to the hearing officer’s conclusions. Neither party objected to the hearing officer’s factual findings.
PERC issued a final order adopting the hearing officer’s findings of fact and conclusions of law. PERC held that the City demonstrated a compelling governmental interest by demonstrating that a financial urgency existed, and also held that the City was not required to complete impasse resolution prior to unilaterally modifying the CBA.
Whether Section 44.7.4,095, Florida Statutes, As Applied, Violates the Constitutional Rights to Collectively Bargain and to Contract
The Union’s primary argument is that the financial urgency statute, as interpreted by PERC, violates the Union’s right to collectively bargain under article 1, section 6 of the Florida Constitution and its right to contract under article 1, section 10 of the Florida Constitution, because the statute impermissibly allows for unilateral changes to CBAs. The Union asserts an as-applied challenge, not a facial challenge.
Unless allowed by law, a unilateral change in a term or condition of employment constitutes an unfair labor practice. Commc’ns Workers of Am. v. Indian River Cnty. Sch. Bd., 888 So.2d 96, 100 (Fla. 4th DCA 2004). PERC is statutorily authorized to correct an unfair labor practice through a variety of options. See § 447.503(6), Fla. Stat. (2012).
A governmental entity’s ability to unilaterally change a bargaining agreement to address a revenue shortfall was addressed in Chiles v. United Faculty of Florida, 615 So.2d 671 (Fla.1993). In Chiles, various public employee unions were unable to come to an agreement with the State over pay increases. The Legislature resolved the impasse by authorizing a 3% pay raise, and the unions ratified it. Later, state officials projected a shortfall in public revenues, and the Legislature first postponed and then eliminated the raises in response to the shortfall. The unions sued, arguing the legislative action violated the right to collectively bargain and constituted an impermissible impairment of their right to contract. Id. at 672. Our supreme court first noted that the agreement providing for a 3% pay raise was a fully enforceable contract and that once the Legislature accepted and funded the agreement, “the state and all its organs are bound by that agreement under the principles of contract law.” Id. at 672-73. The court acknowledged that the legislature must have leeway to deal with bona fide emergencies, but also noted that the right to contract protected by the Florida Constitution severely limits the Legislature’s power to alter a contract. Id. at 673. Thus, the court held, “the legislature has authority to reduce previously approved appropriations to pay public workers’ salaries made pursuant to a collective bargaining agreement, but only where it can demonstrate a compelling state interest.” Id. at 673. *1045 However, before exercising the authority to reduce appropriations, “the legislature must demonstrate no other reasonable alternative means of preserving its contract with public workers, either in whole or in part.” Id. The court then observed that political expedience alone is not a compelling reason to change a contract. Id. “Rather, the legislature must demonstrate that the funds are available from no other possible reasonable source.” Id. (emphasis added). The court held the Legislature had failed to meet this test, and ordered the reinstatement of pay raises. Id.
After Chiles, the Legislature enacted section 447.4095, Florida Statutes, which states:
In the event of a financial urgency requiring modification of an agreement, the chief executive officer or his or her representative and the bargaining agent or its representative shall meet as soon as possible to negotiate the impact of the financial urgency. If after a reasonable period of negotiation which shall not exceed 14 days, a dispute exists between the public employer and the bargaining agent, an impasse shall be deemed to have occurred, and one of the parties shall so declare in writing to the other party and to the commission. The parties shall then proceed pursuant to the provisions of s. 447.403. An unfair labor practice charge shall not be filed during the 14 days during which negotiations are occurring pursuant to this section.
§ 447.4095, Fla. Stat. (2013).
Neither the statute, nor any other provision of Chapter 447 defines the term “financial urgency.” In Headley, as in this case, PERC defined “financial urgency” as “a dire financial condition requiring immediate attention and demanding prompt and decisive action, but not necessarily a financial emergency or bankruptcy.” Headley, 118 So.3d at 892. The First District adopted that definition, and so do we.
However, we disagree with the First District’s application of Chiles to section 447.4095. After concluding PERC’s definition of financial urgency was correct, the First District went on to conclude:
The existence of such a financial condition is a compelling state interest that can justify a unilateral modification of a CBA, but based on the plain language of the statute, section 447.4095 may only be invoked if the financial condition requires modification of the agreement. Thus, if the financial condition can be adequately addressed by other reasonable means, then a modification of the agreement is not “required.” If, however, the other reasonable alternatives available to the local government are not adequate to address the financial condition facing the local government, then section 447.4095 permits the local government to unilaterally modify the CBA.
Id. (footnote omitted). The First District asserted the above articulation “is similar to the test applied in Chiles.” Id. However, later in the opinion, the First District noted that in discussing the second prong of the test, the supreme court in Chiles stated that “the legislature must demonstrate that the funds are available from no other possible reasonable source.” Id. at 893 (quoting Chiles, 615 So.2d at 673). The First District then said:
However, we are not persuaded that this restrictive standard is constitutionally mandated or that it should be extended to section 447.4095. Accordingly, we conclude that in a proceeding under section 447.4095, the local government is not required to demonstrate that funds are not available from any other possible source to preserve the agreement; instead, the local government must only show that other potential cost-saving *1046 measures and alternative funding sources are unreasonable or inadequate to address the dire financial condition facing the local government.

Id.

By asserting that the language “the legislature must demonstrate that the funds are available from no other possible reasonable source” is not constitutionally mandated and should not be extended to section 447.4095, it appears to us that the First District adopted a modified Chiles test. District courts cannot alter the holding of Chiles with respect to the authority of the government to impair a contract and violate the union’s right to collectively bargain. See Hoffman v. Jones, 280 So.2d 431, 440 (Fla.1978) (holding that a district court does not have the authority to overrule supreme court precedent).
The hearing officer in this case specifically rejected the application of the second prong of the Chiles test in deciding whether the City engaged in an unfair labor practice. Although PERC did not specifically state in the final order whether it was applying the second prong, it appears from the language of the order that the second prong was not applied. Thus, we reverse and direct PERC to apply the Chiles standard in determining whether the City engaged in an unfair labor practice.
Because we disagree with the appropriate constitutional standard to be applied to section 447.4095, we certify conflict with the First District’s decision in Headley v. City of Miami, 118 So.3d 885 (Fla. 1st DCA 2013).

Reversed and remanded.

WARNER, J., and LEYENSON, JEFFREY R., Associate Judge, concur.

. The hearing officer also held that he lacked the authority to rule on the constitutionality of a statute.