# Supreme Court of Florida

_____

No. SC13-1882
_____

**WALTER E. HEADLEY, JR., MIAMI LODGE NO. 20, FRATERNAL ORDER OF POLICE, et al.,**
Petitioner,

vs.

**CITY OF MIAMI, FLORIDA,**
Respondent.

[March 2, 2017]
**<u>CORRECTED OPINION</u>**

QUINCE, J.

Walter E. Headley, Jr., Miami Lodge No. 20, Fraternal Order of Police, Inc. ("the Union"), seeks review of the decision of the First District Court of Appeal in <u>Walter E. Headley Jr., Miami Lodge No. 20, Fraternal Order of Police v. City of Miami</u>, 118 So. 3d 885, 887 (Fla. 1st DCA 2013), on the ground that it expressly and directly conflicts with the decision of the Fourth District Court of Appeal in <u>Hollywood Fire Fighters Local 1375 v. City of Hollywood</u>, 133 So. 3d 1042 (Fla.

4th DCA 2014),[1] regarding whether an employer must demonstrate that funds are available from no other possible reasonable source before unilaterally modifying a collective bargaining agreement. We have jurisdiction. See art. V, § 3(b)(3), Fla. Const. For the reasons that follow, we approve the decision of the Fourth District and quash the decision of the First District.

**FACTS**

This case involves a certified bargaining agreement ("CBA") between Miami Lodge No. 20, Fraternal Order of Police (the Union), which represents officers employed by the City of Miami's police department, and the City of Miami ("the City"). The agreement covered the period of October 1, 2007, through September 30, 2010. Headley, 118 So. 3d at 888. On July 28, 2010, the City declared a "financial urgency" and invoked the process set forth in section 447.4095, Florida Statutes (2010). Id. It notified the Union that it intended to implement changes regarding wages, pension benefits, and other economic terms of employment. Id. Following negotiations concerning the financial urgency, the City informed the Public Employees Relations Commission (PERC)[2] that a dispute

---

1. In its decision, the Fourth District also certified conflict with the First District's decision in Headley.

2. PERC is a commission created by the Legislature to carry out the provisions of part II, chapter 447, Florida Statutes. §§ 447.205,.207, Fla. Stat. (2010).

remained between the parties.  Headley, 118 So. 3d at 888.  Despite agreeing on a special magistrate, the parties did not pursue the impasse resolution process.  Id.

On August 31, 2010, the City's legislative body voted to unilaterally alter the terms of the CBA in order to address the financial urgency, and adopted changes that:

> [I]mposed a tiered reduction of wages, elimination of education pay supplements, conversion of supplemental pay, a freeze in step and longevity pay, modification of the normal retirement date, modification of the pension benefit formula, a cap on the average final compensation for pension benefit calculations, alteration of the normal retirement form, and modification of average final compensation.

Id.  The Union then filed an unfair labor practice ("ULP") charge with PERC on September 21, 2010, arguing that the City improperly invoked section 447.4095 and unilaterally changed the CBA before completing the impasse resolution process provided for in section 447.4095.  Id. at 889.

At a hearing before a PERC hearing officer, the City presented evidence of its financial situation.  Id.  The evidence showed that:

> [T]he City's budget was approximately $500 million and that it faced a deficit of approximately $140 million for the 2010/2011 fiscal year; that the City had already implemented hiring freezes, completed all previously contemplated layoffs, ceased procurement, and instituted elimination of jobs as employees left; that labor costs comprised 80% of the City's expenses; that, if additional action was not taken to reduce expenditures, the City's labor costs would exceed its available funds, which would leave the City unable to pay for utilities, gas, and other necessities and render it unable to provide essential services to its residents; and that the City's unemployment rate was 13.5% and

property values were in decline, with 49% of homes in the City having negative equity.

Id. In response, the Union suggested raising the millage tax rate, installing red light cameras, imposing non-union employee layoffs and furloughs, freezing the current cost of living adjustment, and changing the pension funding methodology. Id. These changes, according to the City, "would not adequately address the shortfall because they either failed to generate enough revenue to offset the deficit or they would increase the City's long term financial obligations." Id.

The hearing officer then issued an order recommending dismissal of the Union's ULP charge. Id. The hearing officer found that the statute had been properly invoked by the City and the parties were not required to proceed through the impasse procedures before implementing the changes. Id. In the final order, PERC first defined "financial urgency" as "a financial condition requiring immediate attention and demanding prompt and decisive action which requires the modification of an agreement; however, it is not necessarily a financial emergency or bankruptcy." Id. PERC went on to explain that a determination of financial urgency requires an examination "of the employer's complete financial picture on a case-by-case basis" and an evaluation of whether the employer acted in "good faith." Id. (quoting PERC's final order). As to good faith, PERC focused on whether "a reasonable person could reach the conclusion that 'funding was not available to meet the employer's financial obligations to its employees.' " Id. at

889-90 (quoting final order).  The order also found that section 447.4095 did not require the City to proceed through the impasse resolution process before implementing changes to the CBA.  Id. at 890.  PERC interpreted the statute to require "impact bargaining," which allowed the employer to make the changes after providing notice and a reasonable opportunity to bargain.  Id.

The First District affirmed PERC's final order, finding that it did not err in interpreting or applying section 447.4095.  Id. at 896.  Petitioner now seeks review, arguing that an employer must demonstrate that funds are available from no other possible reasonable source before unilaterally modifying a CBA and that modification can only be made after completing the impasse resolution process.

**ANALYSIS**

Petitioner first argues that before unilaterally modifying a CBA pursuant to the financial urgency statute, an employer must demonstrate that funds are available from no other possible reasonable source.  Deciding this issue will require the interpretation of section 447.4095, Florida Statutes (2010).  Issues of statutory interpretation are subject to de novo review.  See, e.g. Fla. Dep't of Envtl. Prot. v. ContractPoint Fla. Parks, LLC, 986 So. 2d 1260, 1264 (Fla. 2008).  However, on judicial review of a PERC order, "the view of the PERC majority is . . . presumptively the product of special expertise to which courts should defer."

United Faculty of Fla. v. Pub. Emps. Relations Comm'n, 898 So. 2d 96, 100 (Fla. 1st DCA 2005).

Thus, PERC's determination that the statute does not require the employer to demonstrate that the funds are available from no other possible reasonable source is an interpretation of chapter 447 that is entitled to deference. See Pub. Emps. Relations Comm'n v. Dade Cty. Police Benevolent Ass'n, 467 So. 2d 987, 989 (Fla. 1985) ("[A] reviewing court must defer to an agency's interpretation of an operable statute as long as that interpretation is consistent with legislative intent and is supported by substantial, competent evidence."). Despite this tenet of appellate review, where an agency has erroneously interpreted a provision of the law, an agency's construction is not entitled to deference. See City of Safety Harbor v. Commc'ns Workers of Am., 715 So. 2d 265, 266 (Fla. 1st DCA 1998) (citing Pensacola Jr. College v. Public Emps. Rels. Comm'n, 400 So. 2d 59 (Fla. 1st DCA 1981); Se. Volusia Hosp. Dist. v. Nat'l Union of Hosp. & Health Care Emps., 429 So. 2d 1232 (Fla. 5th DCA 1983)).

The right to contract is expressly guaranteed by article 1, section 10 of the Florida Constitution. It is equally enforceable in labor contracts by operation of article 1, section 6 of the Florida Constitution. Petitioner argues that PERC's interpretation of the financial urgency statute violates the Union's right to collectively bargain under article 1, section 6 and its right to contract under article

1, section 10 because the statute impermissibly allows for unilateral changes to CBAs. Generally, an agreement regarding wages, hours, or terms and conditions of employment reached through the collective bargaining process cannot be unilaterally modified during the term of the agreement absent a compelling state interest. Headley, 118 So. 3d at 890.

The statute at issue in this case, section 447.4095, provides:

Financial urgency – In the event of a financial urgency requiring modification of an agreement, the chief executive officer or his or her representative and the bargaining agent or its representative shall meet as soon as possible to negotiate the impact of the financial urgency. If after a reasonable period of negotiation which shall not exceed 14 days, a dispute exists between the public employer and the bargaining agent, an impasse shall be deemed to have occurred, and one of the parties shall so declare in writing to the other party and to the commission. The parties shall then proceed pursuant to the provisions of s. 447.403. An unfair labor practice charge shall not be filed during the 14 days during which negotiations are occurring pursuant to this section.

The statute does not define "financial urgency," and the term is not defined elsewhere in chapter 447. Headley, 118 So. 3d at 891. Moreover, the legislative history does not provide any guidance related to the meaning of the term. Id. The staff analysis merely notes, "The term is undefined in the bill or in chapter 447 and that its interpretation is left to practice." Id. (citing Fla. S. Comm. on Govt. Ops., CS for SB 888 (1995) Staff Analysis (March 27, 1995) (on file with comm.)). Because there are other statutes that apply where the government is facing a financial emergency or bankruptcy, we adopt PERC's definition that a financial

urgency is a dire financial condition requiring immediate attention and demanding prompt and decisive action, but not necessarily a financial emergency or bankruptcy.

We have long held that a "statute must be given its plain and obvious meaning." Holly v. Auld, 450 So. 2d 217, 219 (Fla. 1984) (quoting A.R. Douglass, Inc. v. McRainey, 137 So. 157, 159 (1931)). If the language of the statute is "clear and unambiguous and conveys a clear and definite meaning" there is no need to resort to statutory construction. Id.; accord Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So. 2d 452, 454 (Fla. 1992). Because a government entity acting under section 447.4095 has the potential to impair two fundamental rights afforded to public employees, the statute must be given a strict construction. State v. J.P., 907 So. 2d 1101, 1109 (Fla. 2004). Based on the plain language of the statute, a financial urgency may only be invoked where modification of the agreement is required. If there are other means of addressing the financial condition, then modification is not "required."

We have previously set forth the standard that must be followed where a government entity attempts to change a bargaining agreement to address a revenue shortfall. In Chiles v. United Faculty of Florida, 615 So. 2d 671 (Fla. 1993), the Legislature eliminated raises that had been authorized following an impasse between the State and various public employee unions. Id. There, we held that the

raise was a fully enforceable contract and once it had been funded by the Legislature, "the state and all its organs are bound by that agreement under the principles of contract law." Id. at 672-73. While we recognized that the Legislature must have leeway to respond to emergencies, we stated that the right to contract severely limits the Legislature's ability to alter a contract. Id. at 673. Therefore, we held that "the legislature has authority to reduce previously approved appropriations to pay public workers' salaries made pursuant to a collective bargaining agreement, but only where it can demonstrate a compelling state interest." Id. at 673. Before doing so, "the legislature must demonstrate no other reasonable alternative means of preserving its contract with public workers, either in whole or in part." Id. Further, "the legislature must demonstrate that the funds are available from no other possible reasonable source." Finding that the Legislature did not satisfy the requirements of this test, we ordered the reinstatement of the pay raises. Id.

Section 447.4095 is the codification of the strict scrutiny standard we outlined in Chiles. The term "financial urgency" represents the first prong of strict scrutiny. As previously stated, a financial urgency is "a dire financial condition requiring immediate attention and demanding prompt and decisive action, but not necessarily a financial emergency or bankruptcy." Headley, 118 So. 3d at 892; see also Hollywood Fire Fighters, 133 So. 3d at 1045 (quoting Headley). In showing

that its current financial condition is dire and requires immediate attention, the local government establishes a compelling state interest and satisfies the first prong of strict scrutiny.

The phrase "requiring modification of an agreement" represents the second prong of strict scrutiny. While a local government may be able to show that its financial condition requires immediate attention and demands prompt and decisive action, this may not necessarily require modification of the agreement. As we stated in <u>Chiles</u>, "the mere fact that it is politically more expedient to eliminate all or part of the contracted funds is not in itself a compelling reason." <u>Chiles</u>, 615 So. 2d at 673. Thus, the term "requiring modification" forces the local government to demonstrate that the only way of addressing its dire financial condition is through modification of the CBA. To do this, the local government must demonstrate that the funds are available from no other reasonable source. This satisfies the second requirement of strict scrutiny, that the law be narrowly tailored to achieve a compelling state interest.

In the instant case, the First District held that the language from <u>Chiles</u> is not "constitutionally mandated" and should not be extended to section 447.4095. <u>Headley</u>, 118 So. 3d at 893. The court further concluded that a local government "is not required to demonstrate that funds are not available from any other possible source to preserve the agreement." <u>Id.</u> Instead, the court held that a local

- 10 -

government need only show that "other potential cost-saving measures and alternative funding sources are unreasonable or inadequate to address the financial condition facing the local government." Id. In the conflict case, the Fourth District held that Chiles mandates that the Legislature must demonstrate that the funds are not available from any other source. Hollywood Fire Fighters, 133 So. 3d at 1045. The Fourth District went on to reject the "modified Chiles test" outlined in Headley, which it found lowers the standard that a local government must satisfy before unilaterally modifying an agreement. Id. at 1046.

We agree with the Fourth District. The First District erred in holding that our precedent is not constitutionally mandated and should not be extended to the financial urgency statute. Moreover, the First District incorrectly stated that Chiles requires a local government to demonstrate "that funds are not available from any other possible source." Headley, 118 So. 3d at 893. Not so. As we stated in Chiles, the employer must show that the funds are not available from any other possible reasonable source. Therefore, as the First District held, if the other cost-saving measures are unreasonable, then modification is warranted. However, we do not agree with the First District that if the alternative funding sources are also inadequate then modification is permissible. Instead, the government "must demonstrate no other reasonable alternative means of preserving its contract with

- 11 -

public workers, <u>either in whole or in part</u>." <u>Chiles</u>, 615 So. 2d at 673 (emphasis added).

We have long recognized the right to bargain collectively and the right to contract free of impairment. <u>See</u> <u>Hillsborough Cty. Govtl. Emps. Ass'n v. Hillsborough Cty. Aviation Auth.</u>, 522 So. 2d 358, 362 (Fla. 1988) ("The right to bargain collectively is, as part of the state's constitution's declaration of rights, a fundamental right. As such, it is subject to official abridgment only upon a showing of a compelling state interest."); <u>Yamaha Parts Distribs., Inc. v. Ehrman</u>, 316 So. 2d 557, 559 (Fla. 1975) ("Virtually no degree of contract impairment has been tolerated in this state."). Thus, our conclusions as to this issue "are compelled by the Florida Constitution." <u>Chiles</u>, 615 So. 2d at 673. Accordingly, we approve the decision of the Fourth District and quash the decision of the First District on this issue.

Petitioner also argues that the First District erred in construing the statute to allow an employer to unilaterally modify the CBA without first proceeding through the impasse resolution process set forth in section 447.403, Florida Statutes (2010). This issue centers on the procedure to be followed once a local government has declared a financial urgency requiring modification of an agreement.

As the First District explained:

Section 447.4095 provides for an expedited period of negotiation, not to exceed 14 days, upon declaration of a financial

- 12 -

urgency by a local government and requires the parties to meet as soon as possible after the declaration to "negotiate the impact" of the financial urgency. The statute further provides that, if a dispute remains between the parties after the expiration of the expedited negotiation period, an impasse shall be deemed to have occurred and "[t]he parties shall then proceed pursuant to the provisions of s. 447.403." § 447.4095, Fla. Stat.

The impasse resolution process in section 447.403 begins with the appointment of a special magistrate who is charged with conducting a hearing and making a recommendation to the local government's legislative body as to the resolution of any disputed issues. See § 447.403(3), Fla. Stat. The statute does not establish a deadline for the hearing, but it does provide for at least 45 days of post-hearing procedures. See § 447.403(3)-(4), Fla. Stat. (providing 15 days for the special magistrate to submit his or her recommended decision to the parties, 20 days for the parties to reject the special magistrate's recommendations, and then 10 days for the local government's chief executive officer to submit his or her recommendations to the legislative body). The legislative body is not required to accept the special magistrate's recommendations and, thus, the end-result of the impasse resolution process may be the local government unilaterally imposing changes to the agreement. See § 447.403(4), Fla. Stat.

Headley, 118 So. 3d at 894. Petitioner argues that by requiring the parties to

proceed through the impasse resolution process under section 447.403, the statute

mandates that no changes may be made to the agreement until after the conclusion

of that process. Petitioner argues that because the public employer seeks to change

- 13 -

a mandatory term[3] of the agreement, collective bargaining[4] is required.

Respondent argues that the Legislature specifically used the term "impact" in

reference to "impact bargaining," which is a type of bargaining applicable to

managerial decisions that impact terms and conditions of employment within the

bargaining unit. Impact bargaining requires only notice and an opportunity to

negotiate before the proposed changes are implemented. In essence, the parties

dispute the point at which a modification may be made.

Employing the rules of statutory interpretation is appropriate here, as both

parties provide reasonable interpretations of the statute and the statute is

ambiguous as to when a modification may be made. "Impact" is a term of art in

public sector labor law. See Sch. Dist. of Indian River Cty. v. Fla. Pub. Emps.

Relations Comm'n, 64 So. 3d 723, 729 (Fla. 4th DCA 2011). Under the concept of

impact bargaining, if the modification of a subject classified as a management

---

3. Chapter 447 does not provide a list of subjects to be treated as mandatory in terms of bargaining. Accordingly, PERC is tasked to make that decision on a case-by-case basis. Public Employees Relations Commission, Scope of Bargaining 2 (2d ed. 2005).

4. Collective bargaining means a process of mutual obligations in which a public employer and a bargaining agent have to meet at reasonable times, negotiate in good faith, and effect a written contract encompassing agreements reached concerning the wages, hours, terms and conditions of employment. § 447.309(1), Fla. Stat. (2013).

- 14 -

right[5] would have an effect on the employees' terms and conditions of employment, then the public employer is required to give those employees' bargaining agent an opportunity to bargain the impact of that modification. See Jacksonville Supervisors Ass'n v. City of Jacksonville, 26 F.P.E.R. 31140 (2000). The statutory language that Respondent relies on as an indicator that the Legislature intended to allow for impact bargaining is "negotiate the impact of the financial urgency." § 447.4095, Fla. Stat. (2013).

It is true that when the words in a statute are technical in nature and have a fixed legal meaning, it is presumed that the Legislature intended that the words be given their technical meaning. See 48A Fla. Jur. 2d Statutes § 135 (2014). However, under the principle of expressio unius, est exclusio alterius, meaning "the mention of one thing implies the exclusion of another," legislative direction as to how a thing shall be done is, in effect, a prohibition against it being done any other way. See Sun Coast Int'l, Inc. v. Dep't of Bus. Reg., 596 So. 2d 1118, 1121

_____

5. The Florida Legislature defines public employers' rights as:

> [T]he right of the public employer to determine unilaterally the purpose of each of its constituent agencies, set standards of services to be offered to the public, and exercise control and discretion over its organization and operations. It is also the right of the public employer to direct its employees, take disciplinary action for proper cause, and relieve its employees from duty because of lack of work or for other legitimate reasons.

§ 447.209, Fla. Stat. (2013).

(Fla. 1st DCA 1992). Therefore, section 447.4095 permits the unilateral implementation of changes to the CBA only after parties have completed the impasse resolution proceedings and failed to ratify the agreement. If the Legislature had intended the changes to take effect earlier or under any other circumstances, it would have stated as much.

This is especially true considering that the changes here are unlike the changes that are usually the result of impact bargaining. As noted by Petitioner, impact bargaining results from management making decisions outside of the scope of an agreement which affect the agreement in some way. Bargaining under the financial urgency statute, on the other hand, seeks to alter the terms of the agreement itself. Impact bargaining requires a threshold determination as to whether the employer's decision <u>affects</u> employees' wages, hours, or working conditions. Bargaining under financial urgency inherently seeks to <u>change</u> wages, hours, or working conditions. Moreover, altering the agreement effectively alters the "status quo" between the parties that will remain in place until they are changed through bargaining.

The interpretation set forth by PERC and the First District would allow a local government, once it has declared a financial urgency, the ability to exercise a management right to unilaterally alter the terms and conditions of a contract before completing the procedures set forth by the Legislature in section 447.4095. This

- 16 -

interpretation does not comport with our acknowledgment of and respect for the constitutional right of collective bargaining and prohibition of the impairment to contract. Therefore, we also quash the decision of the First District and remand the case for proceedings that are consistent with this decision.

It is so ordered.

LABARGA, C.J., and PARIENTE, and LEWIS, JJ., concur.
POLSTON, J., concurs in result with an opinion.
CANADY, J., dissents.
LAWSON, J., did not participate.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

POLSTON, J., concurring in result.

I agree with the majority's view that a local government, once it has declared a financial urgency, does not have the ability to unilaterally alter the terms and conditions of a collective bargaining agreement before completing the procedures required by the Legislature in sections 447.4095 and 447.403, Florida Statutes. I would decide this on the plain requirements of the statutory provisions rather than any constitutional grounds.

Application for Review of the Decision of the District Court of Appeal – Direct Conflict of Decisions

First District - Case No. 1D12-2116

(Miami-Dade County)

- 17 -

Ronald Jay Cohen of Rice Pugatch Robinson & Schiller, P.A., Fort Lauderdale, Florida, and Robert David Klausner of Klausner, Kaufman, Jensen and Levinson, P.A., Plantation, Florida,

     for Petitioners

Victoria Mendez, City Attorney, John Anthony Greco, Deputy City Attorney, Diana Vizcaino, Former Assistant City Attorney, and Kerri Lauren McNulty, Assistant City Attorney, Miami, Florida,

     for Respondent

Richard Anthony Sicking, Coral Gables, Florida,

     for Amicus Curiae Florida Professional Firefighters, Inc., International Association of Firefighters, AFL-CIO

Noah Scott Warman of Sugarman & Susskind, P.A., Coral Gables, Florida,

     for Amicus Curiae Hollywood Fire Fighters, Local 1375, IAFF, Inc.

Thomas Wayne Brooks of Meyer, Brooks, Demma and Blohm, P.A., Tallahassee, Florida,

     for Amicus Curiae Florida Education Association

Paul Andrew Donnelly and Laura Ann Gross of Donnelly and Gross, P.A., Gainesville, Florida,

     for Amicus Curiae Communications Workers of America

G. Hal Johnson, Tallahassee, Florida,

     for Amicus Curiae Florida Police Benevolent Association

Daniel H. Thompson and Mitchell Wayne Berger of Berger Singerman LLP, Fort Lauderdale, Florida, and Stephen Hale Cypen of Cypen & Cypen, Miami Beach, Florida,

     for Amicus Curiae Board of Trustees of the City of Hollywood, etc., et al.

David Clayton Miller and James Chumley Crosland of Bryant Miller Olive P.A., Miami, Florida,

for Amicus Curiae The City of Hollywood, Florida

Michael Patrick Spellman, Hetal Desai McGuire, and Jeffrey Douglas Slanker of Sniffen and Spellman, P.A., Tallahassee, Florida; and Harry Morrison, Jr. and Kraig Armantrout Conn, Florida League of Cities, Inc., Tallahassee, Florida,

for Amicus Curiae Florida League of Cities

John Maxwell Hament, Sarasota, Florida,

for Amicus Curiae East Naples Fire Control & Rescue District