DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**JENNIFER RIPPLE,** as personal representative of the
**ESTATE OF RICHARD D. COUNTER,** deceased,
Appellant,

v.

**CBS CORPORATION, GENERAL ELECTRIC COMPANY,
THE GOODYEAR TIRE & RUBBER COMPANY,
JOHN CRANE INC.,** and **WARREN PUMPS, LLC,**
Appellees.

No. 4D20-1939

[March 30, 2022]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Martin J. Bidwill, Judge; L.T. Case No. CACE15-012497.

Mathew D. Gutierrez and Juan P. Bauta, II, of The Ferraro Law Firm, P.A., Miami, for appellant.

Matthew J. Conigliaro of Carlton Fields, P.A., Tampa, for appellees.

PER CURIAM.

In this case involving Florida's Wrongful Death Act, the decedent's estate appeals from the circuit court's final judgment in the defendants' favor. The final judgment was based on the circuit court's orders granting the defendants': (1) motion for judgment on the pleadings as to the decedent's wife's damages claim; and (2) motion for summary judgment as to the decedent's adult children's alternative damages claim.

On appeal, the estate raises a primary argument and an alternative argument. The estate's primary argument is that this court, in *Kelly v. Georgia-Pacific, LLC*, 211 So. 3d 340 (Fla. 4th DCA 2017), erred in holding that a spouse who had married a person after the person was injured, and the injured person later dies, is barred from recovering "for loss of the decedent's companionship and protection and for mental pain and suffering" under section 768.21(2) of the Wrongful Death Act.

The estate's alternative argument is that, if a spouse who had married the decedent after the decedent's injury is barred from recovering damages under section 768.21(2) of the Wrongful Death Act (per *Kelly*), then the decedent's surviving adult children may recover "for lost parental companionship, instruction, and guidance and for mental pain and suffering" under section 768.21(3) of the Wrongful Death Act.

On the estate's primary argument, we affirm based on *Kelly*, though we certify conflict between *Kelly* and *Domino's Pizza, LLC v. Wiederhold*, 248 So. 3d 212 (Fla. 5th DCA 2018). In *Domino's*, the Fifth District expressly disagreed with *Kelly* and instead held that a spouse who had married a person after the person was injured, and the person later dies, is <u>not</u> barred from recovering "for loss of the decedent's companionship and protection and for mental pain and suffering" under section 768.21(2) of the Wrongful Death Act.

However, on the estate's alternative argument, which comes to us as an issue of first impression, we agree with the estate that, if a spouse who had married the decedent after the decedent's injury is barred from recovering damages under section 768.21(2) of the Wrongful Death Act (per *Kelly*), then the decedent's surviving adult children may recover "for lost parental companionship, instruction, and guidance and for mental pain and suffering damages" under section 768.21(3) of the Wrongful Death Act.

We present this opinion in five parts:

I.   The decedent's pre-death personal injury complaint;
II.  The estate's wrongful death amended complaint;
III. The defendants' motion for judgment on the pleadings;
IV.  The defendants' motion for summary judgment; and
V.   Our review.

## I. *The Decedent's Pre-Death Personal Injury Complaint*

In 2015, the decedent filed his original personal injury complaint, the allegations of which we are required to accept as true. *See Miller v. Finizio & Finizio, P.A.*, 226 So. 3d 979, 982 (Fla. 4th DCA 2017) ("Where a defendant moves for judgment on the pleadings, a court must take as true all of the material allegations in the plaintiff's complaint and must disregard all of the denials in the defendant's answer.").

According to the complaint, from the 1950s through the 1990s, the decedent was exposed to asbestos, which is a toxic substance that may

cause mesothelioma. The decedent allegedly inhaled asbestos while at sea during military service, while working at various industrial plants, and at his own home.

On May 22, 2015, the decedent was diagnosed with mesothelioma. Less than two months later, on July 4, 2015, the decedent married the woman with whom he had lived for decades ("the wife"). On July 23, 2015, the decedent filed his original personal injury complaint. His complaint alleged common law negligence and strict liability actions against multiple defendants, and sought damages for his injuries.

Less than four months later, on November 1, 2015, the decedent died from mesothelioma. He was survived by the wife and two adult children from a prior marriage.

## II. *The Estate's Wrongful Death Amended Complaint*

The wife—in her capacity as the decedent's estate's personal representative—immediately and successfully sought leave to amend the complaint. The amended complaint replaced the decedent's common law personal injury claims with the estate's claim to recover damages for the wife under section 768.21(2) of the Wrongful Death Act or, in the alternative, damages for the decedent's adult children under section 768.21(3) of the Wrongful Death Act.

The Wrongful Death Act authorizes a decedent's personal representative to "recover for the benefit of the decedent's **survivors** … all **damages**, as specified in [the] act, caused by the injury resulting in death." § 768.20, Fla. Stat. (2015) (emphases added).

Pertinent here, the Wrongful Death Act defines "survivors" as "the decedent's spouse, [and] children." § 768.18(1), Fla. Stat. (2015). The Wrongful Death Act's "damages" provision pertinently provides:

> (1) Each survivor may recover the value of lost support and services from the date of the decedent's injury to her or his death, with interest, and future loss of support and services from the date of death and reduced to present value. In evaluating loss of support and services, the survivor's relationship to the decedent, the amount of the decedent's probable net income available for distribution to the particular survivor, and the replacement value of the decedent's services to the survivor may be considered. In computing the duration of future losses, the joint life expectancies of the survivor and

3

the decedent and the period of minority, in the case of healthy minor children, may be considered.

(2) The ***surviving spouse*** may also recover for loss of the decedent's companionship and protection and for mental pain and suffering from the date of injury.

(3) Minor children of the decedent, and all children of the decedent ***if there is no surviving spouse***, may also recover for lost parental companionship, instruction, and guidance and for mental pain and suffering from the date of injury. ...

§ 768.21(1)-(3), Fla. Stat. (2015) (emphases added).

The defendants filed their respective answers denying the amended complaint's material allegations, including the wife's damages claim and the adult children's alternative damages claim.

### III. *The Defendants' Motion for Judgment on the Pleadings*

The defendants then filed a motion for judgment on the pleadings as to both the wife's damages claim and the adult children's alternative damages claim.

As to the wife's damages claim, the defendants argued she was barred from recovering "for loss of the decedent's companionship and protection and for mental pain and suffering" under section 768.21(2) of the Wrongful Death Act because she "and [the decedent] were not married at the time of [the decedent's] alleged exposure to asbestos," and thus she did not qualify as the decedent's "surviving spouse" as that term is used in section 768.21(2). More specifically, the defendants argued:

> Florida follows the common-law rule that "a party must have been legally married to the injured person **at the time of the injury** in order to assert a claim for loss of consortium." *Fullerton v. Hosp[.] Corp[.] of Am[.]*, 660 So. 2d 389, 390 (Fla. 5th DCA 1995) (citing *Tremblay v. Carter*, 390 So. 2d 816, 817 (Fla. 2d DCA 1980) (holding that when an accident occurs prior to the existence of a relationship of husband and wife, a person cannot acquire the right to claim a loss of consortium when a person subsequently marries the injured party)); *Kelly v. Georgia-Pacific, LLC*, 211 So. 3d 340 (Fla. 4th DCA 2017) (holding that when the decedent was exposed to asbestos in 1973-74 and married his wife in 1976, the decedent's wife

4

may not recover loss of consortium damages in a wrongful death asbestos suit). The rationale behind this rule is that a person may not marry into a cause of action and that a line must be drawn somewhere as to liability. *Id.*

As to the adult children's alternative damages claim, the defendants argued the adult children were barred from recovering "for lost parental companionship, instruction, and guidance and for mental pain and suffering" under section 768.21(3) of the Wrongful Death Act because the wife qualified as a "surviving spouse" as that term is used in section 768.21(3).

The estate filed a response arguing this court, in *Kelly*, erred in holding that a spouse, who had married the decedent after the decedent's injury, is barred from recovering "for loss of the decedent's companionship and protection and for mental pain and suffering" under section 768.21(2) of the Wrongful Death Act. Instead, the estate argued, the Fifth District, in *Domino's Pizza, LLC v. Wiederhold*, 248 So. 3d 212 (Fla. 5th DCA 2018), properly held that a spouse who had married the decedent after the decedent's injury is *not* barred from recovering "for loss of the decedent's companionship and protection and for mental pain and suffering" under section 768.21(2) of the Wrongful Death Act. More specifically, the estate argued:

> [I]n *Domino's …*, the Fifth District adopted the "common and ordinary" meaning of the term "surviving spouse," which, as the [Fifth District] noted, is "a married person who outlives his or her husband or wife," irrespective of whether the marriage commenced before or after the decedent-spouse's exposure to asbestos. [248 So. 3d at 219]. Under [*Domino's*], because [the wife there] outlived her husband, she [was] eligible to recover [under the Act] as [the decedent's] ["]surviving spouse.["]

> Accordingly, [the estate] respectfully requests that [the] [circuit] [c]ourt [here] deny [the defendants'] [m]otion [for judgment on the pleadings] based on the [Fifth District's] ruling in [*Domino's*].

> In the alternative, if the [circuit] [c]ourt [here] declines to follow *Domino's*, and proceeds to analyze the [defendants'] [m]otion [for judgment on the pleadings] under *Kelly*, the [m]otion should be granted as to [the wife], but denied as to [the decedent's] adult children, for the reasons that follow.

5

> [The defendants'] [m]otion [for judgment on the pleadings] is an irreconcilable contradiction. [The defendants] first assert[] that [the wife] is **not** eligible under [section 768.21(2) of] the Act to recover [damages] as [the decedent's] "surviving spouse," because she married [the decedent] *after* he was exposed to asbestos. As explained above, under *Kelly*, [the defendants] [are], in fact, correct on this point. However, in the same breath, [the defendants] then contend[] that [the wife] **is** [the decedent's] "surviving spouse[]" [under section 768.21(3) of the Act,] and that her status as such precludes [the decedent's] adult children from recovering [damages] under [section 768.21(3)] of the Act. [The defendants'] two positions cannot be harmonized. …

(internal footnote omitted).

After a hearing, the circuit court entered an order granting in part and denying in part the defendants' motion for judgment on the pleadings. In the order, the circuit court, citing *Kelly*, granted the motion as it pertained to the wife's damages claim under section 768.21(2) of the Act "as she was not married to decedent at the time of the exposure." However, the circuit court, without detail, denied the motion as to the adult children's damages claim under section 768.21(3) of the Act.

### IV. *The Defendants' Motion for Summary Judgment*

Later, the defendants filed a motion for summary judgment as to the adult children's damages claim under section 768.21(3) of the Act. The defendants argued:

> Under Florida's Wrongful Death Act, adult children may only recover for "lost parental companionship, instruction, and guidance and for mental pain and suffering from the date of injury" "if there is no surviving spouse." Fla. Stat. § 768.21(3) ….
>
> It is undisputed that [the wife] is the ["]surviving spouse["] of the [d]ecedent. …

The estate filed a response, asserting:

> [T]he … [d]efendants [previously] moved for … judgment [on the pleadings] as to [the wife's] loss of consortium claim

6

pursuant to the [Fourth] DCA's poorly reasoned opinion in *Kelly* ....  [The] [circuit] [c]ourt granted the [m]otion ....

The poor reasoning found in *Kelly* is now being expanded by the instant [m]otion.  As the [Fifth District] in *Domino's* ... correctly observed, ... *Kelly* ... runs "contrary to established precedent", "contrary to the legislative intent", and is "unconvincing." [248 So. 3d] at 221.  In fact, what the instant [m]otion [for summary judgment] attempts is exactly what the Wrongful Death Act intended to remedy.  The [Fifth District] stated:

> It also would be contrary to the legislative intent expressed in section 768.17, Florida Statutes (2012), which states, "It is the public policy of the state to shift the losses resulting when wrongful death occurs from the survivors of the decedent to the wrongdoer. Sections 768.16-768.26 are remedial and shall be liberally construed."  *See also Wagner, Vaughan, McLaughlin & Brennan, P.A. v. Kennedy Law Grp.*, 64 So. 3d 1187, 1191 (Fla. 2011) (noting that [the] Act is "designed to substitute the financial resources of the wrongdoer for the resources of the decedent, in an attempt to meet the financial obligations of the decedent, ... and to prevent a tortfeasor from evading liability for his or her misconduct when such misconduct results in death").

[*Domino's*, 248 So. 3d] at 220.

After a hearing, the circuit court entered an order granting the defendants' summary judgment motion.  In the order, the circuit court reasoned:

> [S]ection 768.21(3), provides that damages are awardable under the Wrongful Death statute for "all children of the decedent if there is no [']surviving spouse['] ...."  As there is a surviving spouse here, the defendant contends that the adult children are barred from recovery.  While the decedent has a surviving spouse, this [c]ourt previously ruled that the spouse cannot recover under the Wrongful Death Act based upon the Fourth District's decision in *Kelly* ....  As a result, the [estate] contends that application of the statute would completely cut off recovery under the Wrongful Death statute for the

decedent's family, other than for funeral expenses. Such a result, the [estate] argues, would "turn back the legal clock to a time when a tortfeasor could delay justice until the injured person died and thereby avoid all liability for their wrongdoing." Notwithstanding the significant practical effect of the requested ruling, this [circuit] court is bound by *Kelly* and the plain language of the statute. Therefore, as there is a surviving spouse, albeit a spouse who is herself barred from recovery pursuant to *Kelly*, an adult child is barred from recovery pursuant to the plain language of section 768.21(3) of the Wrongful Death Act.

After the circuit court's summary judgment order, the estate still had several economic damages claims pending under the Wrongful Death Act, including lost support and services damages, as well as damages for medical expenses, funeral expenses, and net accumulations. However, the estate declined to pursue those damages claims and instead filed a notice voluntarily dismissing without prejudice "all claims remaining in this action."

The estate then asked the circuit court to enter final judgment in the defendants' favor so that the estate could appeal the order granting the defendants' motion for judgment on the pleadings and the defendants' summary judgment motion. The circuit court did so. This appeal followed.

## V. *Our Review*

### A. *The Wife's Claim*

On the circuit court's order granting the defendants' motion for judgment on the pleadings as to the wife's damages claim, our review is de novo. *See Mercantil Bank, N.A. v. Pazmino*, 262 So. 3d 826, 828 (Fla. 4th DCA 2019) ("We review a judgment on the pleadings de novo."); *Headley v. City of Miami*, 215 So. 3d 1, 5 (Fla. 2017) ("Issues of statutory interpretation are subject to de novo review.").

Applying de novo review, we affirm the judgment on the pleadings pursuant to *Kelly v. Georgia-Pacific, LLC*, 211 So. 3d 340 (Fla. 4th DCA 2017). *Kelly* presented the same legal issue, though under slightly different facts involving a marriage which long pre-dated the injury's diagnosis.

8

We shall discuss *Kelly* in greater detail, before contrasting it with the Fifth District's later-issued conflicting decision in *Domino's Pizza, LLC v. Wiederhold*, 248 So. 3d 212 (Fla. 5th DCA 2018).

### 1. *Kelly v. Georgia-Pacific, LLC*

In *Kelly*, the decedent was exposed to asbestos from 1973 to 1974. 211 So. 3d at 342. The decedent got married in 1976. *Id.* Nearly forty years later, in 2014, the decedent was diagnosed with mesothelioma and sued various defendants, alleging they were responsible for the asbestos which caused the disease. *Id.* The decedent died from mesothelioma in 2015. *Id.*

The decedent's estate converted the action into a wrongful death claim. *Id.* The claim sought the wife's damages for loss of consortium under section 768.21(2) of the Wrongful Death Act. *Id.* The defendants filed a motion to dismiss, relying on common law to argue that a spouse must be married to the injured person at the time of the injury for the spouse to bring a loss of consortium claim, and no dispute existed that the wife was not married to the decedent when he was injured. *Id.* The circuit court entered an order granting the motion to dismiss. *Id.* The estate appealed. *Id.*

We affirmed. We framed the issue on appeal as "whether the Florida Wrongful Death Act supersedes the common law requirement that a spouse must be married to the decedent before the date of the decedent's injury to recover damages for loss of consortium." *Id.* "Stated another way," we addressed whether "the legislative enactment, giving the estate's representatives and survivors a remedy not found in the common law, 'explicitly,' 'clearly,' and 'unequivocally' abrogate[d] the common law requirements to recover consortium damages when those damages are awarded under the Wrongful Death Act." *Id.* Concluding that the Act did not abrogate the common law, we held:

> Because there can be no change in the common law unless the statute is "explicit and clear in that regard" and the Wrongful Death Act does not "explicitly," "clearly," and "unequivocally" abrogate the common law rule, .... a spouse who was not married to a decedent at the time of the decedent's injury may not recover consortium damages as part of a wrongful death suit.

*Id.*

9

In support of that holding, we explained the common law "marriage before injury" rule and its application to the case:

> [U]nder the common law of loss of consortium, the parties must have been married to one another at the time of the injury to recover damages for loss of consortium. *Tremblay v. Carter*, 390 So. 2d 816, 817 (Fla. 2d DCA 1980). As the court in *Tremblay* explained, the rationale for the common law rule is that
>
>> [s]ince a cause of action for personal injury and the derivative rights flowing therefrom ordinarily accrue when the tort is committed, the courts concluded that to permit an unmarried person to claim loss of consortium upon ... marriage to an injured spouse would have the effect of allowing [the person] to marry into the cause of action.
>
> *Id.*
>
> In the present case, the decedent's injury occurred when he was exposed to asbestos. *See Am. Optical Corp. v. Spiewak*, 73 So. 3d 120, 129 (Fla. 2011) ("Here, a foreign substance—asbestos fibers—were inhaled and became embedded in the lungs of the plaintiffs without their knowledge or consent. This ... constitutes an actual injury that has been inflicted upon the bodies of the plaintiffs."). Thus, because the decedent was injured before [the wife] married him, for [the wife] to prevail in her claim, we must find that the Wrongful Death Act specifically supersedes the common law of loss of consortium.

*Id.* at 344.

We then explained why the Wrongful Death Act did not specifically supersede the common law of loss of consortium:

> Whether the legislature intended for the Wrongful Death Act to supersede the common law of loss of consortium "depends upon the legislative intent as manifested in the language of the statute." *Thornber v. City of Fort Walton Beach*, 568 So. 2d 914, 918 (Fla. 1990). "The presumption is that no change in the common law is intended unless the statute is explicit and clear in that regard." *Id.* Thus, "[u]nless

10

a statute unequivocally states that it changes the common law, or is so repugnant to the common law that the two cannot coexist, the statute will not be held to have changed the common law." *Id.*

...

Applying the principles of *Thornber* to the present case leads us to the conclusion that the statutory language of the Wrongful Death Act does not, directly or indirectly, abrogate or supersede the common law requirement that the spouse must be married to the injured party at the time of the injury to recover for loss of consortium. Here, the plain language of the statute shows that the legislature clearly intended that the Wrongful Death Act allow for a surviving spouse to recover "consortium-type" damages. ... The legislature is presumed to know of the common law limitation for recovering loss of consortium damages. *Williams v. Jones*, 326 So. 2d 425, 435 (Fla. 1975) ("[T]he Legislature is presumed to know the existing law when it enacts a statute ...."). However, despite the clear intention that the Wrongful Death Act allow for the recovery of consortium damages after the decedent's death, nothing in the statute abrogates the common law marriage before injury rule. Therefore, because the legislature did not explicitly and clearly overrule the common law limitation on loss of consortium when enacting the Wrongful Death Act, the common law marriage before injury rule was incorporated into the Act. ...

Further, there appears to be no reason why the common law requirement—that the injured spouse and the surviving spouse be married prior to the date of injury—cannot coexist with the Wrongful Death Act. Nothing in the Wrongful Death Act is "so repugnant to the common law that the two cannot coexist." *Thornber*, 568 So. 2d at 918. The common law rule merely limits the circumstances for when the surviving spouse may recover "consortium-type" damages under the wrongful death statute for the "decedent's companionship and protection and for mental pain and suffering from the date of injury." § 768.21(2), Fla. Stat. (2015).

Additionally, we note that the plain language of the Wrongful Death Act indicates that the legislature did not intend for a surviving spouse to recover consortium damages

11

if the surviving spouse was not married to the decedent prior to the date of the decedent's injury. The definition of "survivor" in the statute is limited to familial relationships only, and both subsections (1) and (2) of section 768.21 clearly provide that damages are recoverable from the date of "injury." §§ 768.18(1), 768.21(1)–(2), Fla. Stat. (2015). Thus, the plain language of the statute indicates that the legislature anticipated that the surviving spouse would have been married to the decedent prior to the date of injury.

...

Finally, it would make no sense to allow a spouse to recover consortium damages under the Wrongful Death Act simply because his or her spouse has died when that same spouse would be prohibited from recovering the same damage under a loss of consortium claim had his or her spouse survived. We are required to interpret the Wrongful Death Act to avoid absurd results such as this. *Allstate Ins. Co. v. Rush*, 777 So. 2d 1027, 1032 (Fla. 4th DCA 2000) ("In all, statutes must be construed as to avoid an unreasonable or absurd result.").

*Id.* at 344-46.

Based on the foregoing reasoning, we concluded:

[W]e affirm ... and hold that the Florida Wrongful Death Act does not clearly or explicitly abrogate or overturn the common law requirement that the decedent and surviving spouse be married prior to the date of injury to recover consortium damages. Although there may be persuasive policy reasons for superseding this common law rule, especially in the present case where the injury is latent, such a change may come only from the legislature by statutory enactment.

*Id.* at 347 (internal footnote omitted).

Our holding and reasoning in *Kelly* applies equally to the instant case.

2. *Domino's Pizza, LLC v. Wiederhold*

In *Domino's*, the Fifth District also addressed whether a surviving spouse who married the decedent after the decedent's injury occurred is

barred from recovering loss of consortium damages under the Wrongful Death Act.  248 So. 3d at 216.

In *Domino's*, the decedent was involved in a two-car accident.  *Id.*  The accident immediately rendered the decedent a quadriplegic.  *Id.*  One month after the accident, the decedent filed a negligence action against the other driver and related defendants.  *Id.* at 217.  Some months later, the decedent got married.  *Id.*  Then, over a year after the injury occurred, the decedent died.  *Id.*  The decedent's estate was substituted as the plaintiff.  *Id.*  The estate then filed an amended complaint to allege the wife's wrongful death damages claim.  *Id.*

The defendants filed various motions arguing the wife was barred from recovering damages pursuant to the "marriage before injury" rule because she married the decedent after he was injured.  *Id.*  The trial court denied the defendants' motions, and the estate ultimately prevailed at trial on the wife's damages claim.  *Id.* at 217-18.

On appeal, the Fifth District specifically analyzed whether, under the Wrongful Death Act, a person's status as a "surviving spouse" is determined on the date of injury, and thus whether the wife qualified as a "surviving spouse" under the Act.  *Id.* at 218-21.  Concluding that the wife qualified as a "surviving spouse" under the Act, the Fifth District reasoned:

> Although the Act does not specify whether a "surviving spouse" must be married at the time of injury or the time of death, that alone does not render the term unclear or ambiguous if the common and ordinary meaning leads to clear and unambiguous results.  *Univ. of Fla. Bd. of Trs. v. Andrew*, 961 So. 2d 375, 376 (Fla. 1st DCA 2007); *see State v. Nichols*, 892 So. 2d 1221, 1227 (Fla. 1st DCA 2005) (holding failure of statute to define term does not necessarily render statute ambiguous).  The common and ordinary meaning of the term "survivor" is "esp. a person remaining alive after an event in which others have died."  *Survivor*, The Oxford American College Dictionary (2002 ed.).  Black's Law Dictionary defines "survivor" even more succinctly as "[o]ne who outlives another."  *Survivor*, Black's Law Dictionary (9th ed. 2009).  By extension, the common and ordinary meaning of a "surviving spouse" is a married person who outlives his or her husband or wife.  Consequently, applying the plain meaning of these terms, <u>we conclude the term "surviving spouse" is necessarily determined on the date of the other spouse's death</u> because one cannot be a survivor before that date.  *Accord King v. Font*

13

*Corp.*, 612 So. 2d 662, 664 (Fla. 2d DCA 1993) ("[I]t seems clear that the definition of 'survivors' in section 768.18, Florida Statutes (Supp. 1990), determines survivorship at the moment of the wrongful death."); *see Snyder v. Alamo Rent-A-Car, Inc.*, 790 So. 2d 1262, 1262 (Fla. 5th DCA 2001) (Sharp, J., concurring specially) (noting that this Court's affirmance was based on *King*); Thomas D. Sawaya, 6 Fla. Prac., *Personal Injury & Wrongful Death Actions* § 20:1 (2017-18 ed.) ("The definition of survivor in this statute determines survivorship at the time of the decedent's death." (citing *King*, 612 So. 2d at 664)).

This conclusion is consistent with cases recognizing that wrongful death actions accrue on the date of the decedent's death. *See, e.g.*, *Love v. Hannah*, 72 So. 2d 39, 41 (Fla. 1954) ("The plaintiffs' right of action under the wrongful death statute must be determined by the facts existing at the time of the death of decedent."); *Phlieger v. Nissan Motor Co.*, 487 So. 2d 1096, 1098 (Fla. 5th DCA 1986) (reiterating that supreme court held, in *Love*, that plaintiff's right of action under wrongful death statute must be determined by facts existing at time of decedent's death); *Bruce v. Byer*, 423 So. 2d 413, 414-15 (Fla. 5th DCA 1982) ("The general rule is that a cause of action for wrongful death accrues upon the date of the decedent's death.").

248 So. 3d at 219 (emphasis added).

The Fifth District, recognizing that its holding conflicted with *Kelly*, addressed *Kelly* as follows:

We agree that although the definition of "survivors" is limited to familial relationships, nothing in that definition limits those terms to familial relationships **existing at the time of injury.** As the *Kelly* dissent observed, "The statute defines 'survivors' as including 'the decedent's spouse' without any other limitation." *Id.* at 348 (Taylor, J., dissenting). Thus, "[i]t would be inappropriate for this Court to read any more into [the statutory definition] than what is plainly there." *Streeter*, 509 So. 2d at 272. "Even where a court is convinced that the legislature really meant and intended something not expressed in the phraseology of the act, it will not deem itself authorized to depart from the plain meaning of the language which is free from ambiguity."

14

*Forsythe v. Longboat Key Beach Erosion Control Dist.*, 604 So. 2d 452, 454 (Fla. 1992) (quoting *Van Pelt v. Hilliard*, 75 Fla. 792, 78 So. 693, 694 (1918)).

Moreover, if, as posited by the *Kelly* majority, survivorship is determined at the time of injury, then children born or adopted by the decedent after the date of injury would not be considered survivors. Likewise, a spouse who divorces a decedent after the date of injury would be considered a survivor. This would be contrary to established precedent holding that such determinations are made at the time of the decedent's death. *See, e.g.*, *Powell v. Gessner*, 231 So. 2d 50, 51 (Fla. 4th DCA) ("[T]he status of a child in respect to its right to sue for the wrongful death of a parent is determined at the time of the death of the parent."), *opinion adopted*, 238 So. 2d 101 (Fla. 1970). It also would be contrary to the legislative intent expressed in section 768.17, Florida Statutes (2012), which states, "It is the public policy of the state to shift the losses resulting when wrongful death occurs from the survivors of the decedent to the wrongdoer. Sections 768.16-768.26 are remedial and shall be liberally construed." *See also Wagner, Vaughan, McLaughlin & Brennan, P.A. v. Kennedy Law Grp.*, 64 So. 3d 1187, 1191 (Fla. 2011) (noting that Act is "designed to substitute the financial resources of the wrongdoer for the resources of the decedent, in an attempt to meet the financial obligations of the decedent, ... and to prevent a tortfeasor from evading liability for his or her misconduct when such misconduct results in death").

The *Kelly* majority's reliance on the Act's damage provisions to limit the definition of survivors is unconvincing. It concluded that the phrase "from the date of injury," repeatedly used in the damages section, "indicates that the legislature anticipated that the surviving spouse would have been married to the decedent prior to the date of injury." 211 So. 3d at 345. While it is appropriate to read all sections of the Act together to determine the meaning of its terms, *see, e.g.*, *BellSouth Telecommunications, Inc. v. Meeks*, 863 So. 2d 287, 290 (Fla. 2003) ("To ascertain the meaning of a specific statutory section, the section should be read in the context of its surrounding sections."), we agree with the *Kelly* dissent that the damages provisions do not limit **who** may recover, but rather, only limits **what** a survivor may recover. *See Kelly*, 211 So. 3d at 349 (Taylor, J., dissenting). In fact, the

legislature's frequent differentiation between the "date of injury" and the "date of death" in section 768.21 demonstrates its awareness that these may be two different dates in a given case. Given this recognition, it is illogical to conclude that the legislature would not also have recognized that a decedent's legal relationships and obligations may change between the date of injury and date of death. Yet, the *Kelly* majority's conclusion limits such relationships and obligations to those present on the date of injury. If the legislature intended to limit survivors to those existing on the date of injury, it could have done so. …

Even if such a limitation is read into the statute based on the damages language, it would, at best, create an ambiguity as to whether survivors are determined on the date of injury or the date of death. …

…

For these reasons, we affirm the trial court's ruling allowing [the wife] to recover as a ["]surviving spouse["] [under the Act]. We certify express and direct conflict with *Kelly* on this issue.

*Id.* at 220-21.

### 3. *Why We Favor Our Reasoning Over the Fifth District's Reasoning*

We favor our reasoning in *Kelly* over the Fifth District's reasoning in *Domino's*, because in *Domino's*, the Fifth District neither mentioned *Thornber* nor conducted the required *Thornber* analysis.

*Thornber* requires a court to examine whether a legislative enactment either unequivocally states that it changes the common law "or is so repugnant to the common law that the two cannot coexist …." 568 So. 2d at 918. As we held in *Kelly*:

[T]here appears to be no reason why the common law requirement—that the injured spouse and the surviving spouse be married prior to the date of injury—cannot coexist with the Wrongful Death Act. Nothing in the Wrongful Death Act is "so repugnant to the common law that the two cannot coexist." *Thornber*, 568 So. 2d at 918. The common law rule merely limits the circumstances for when the surviving spouse

may recover "consortium-type" damages under the wrongful death statute for the "decedent's companionship and protection and for mental pain and suffering from the date of injury." § 768.21(2), Fla. Stat. (2015).

211 So. 3d at 345.

In *Domino's*, however, the Fifth District examined the Wrongful Death Act without ever mentioning, much less analyzing, *Thornber*. Instead, the Fifth District read the Act in isolation. That approach overlooked the principle, which we referenced in *Kelly*, that statutes in derogation of the common law "will not be interpreted to displace the common law further than is clearly necessary." *Kelly*, 211 So. 3d at 344 (citing *Carlile v. Game & Fresh Water Fish Comm'n*, 354 So. 2d 362, 364 (Fla. 1977)).

We also understand *Domino's* as permitting the "absurd result" of which we forewarned in *Kelly*:

> [I]t would make no sense to allow a spouse to recover consortium damages under the Wrongful Death Act simply because his or her spouse has died when that same spouse would be prohibited from recovering the same damage under a loss of consortium claim had his or her spouse survived. We are required to interpret the Wrongful Death Act to avoid absurd results such as this. *Allstate Ins. Co. v. Rush*, 777 So. 2d 1027, 1032 (Fla. 4th DCA 2000) ("In all, statutes must be construed as to avoid an unreasonable or absurd result.").

211 So. 3d at 346.

Based on the foregoing, we reject the estate's argument to recede from *Kelly*, and therefore affirm the circuit court's order granting the defendants' motion for judgment on the pleadings as to the wife's claim "for loss of the decedent's companionship and protection and for mental pain and suffering" under section 768.21(2) of the Wrongful Death Act. However, we certify conflict between *Kelly* and *Domino's*.

## B. *The Adult Children's Claim*

On the circuit court's order granting the defendants' motion for summary judgment as to the adult children's alternative damages claim, our review is de novo. *See Volusia County v. Aberdeen at Ormond Beach, L.P.,* 760 So. 2d 126, 130 (Fla. 2000) (standard of appellate review

17

applicable to grant of summary judgment is de novo); *Headley*, 215 So. 3d at 5 ("Issues of statutory interpretation are subject to de novo review.").

Applying de novo review, we reverse the summary judgment. We begin our analysis by recognizing the circuit court apparently found that the decedent's adult children were barred from recovery because the decedent's wife was his "surviving spouse" under section 768.21(3) of the Wrongful Death Act. *See* § 768.21(3), Fla. Stat. (2015) ("Minor children of the decedent, and all children of the decedent ***if there is no surviving spouse***, may also recover for lost parental companionship, instruction, and guidance and for mental pain and suffering from the date of injury.") (emphases added).

However, the circuit court failed to properly account for the fact that the defendants' motion for judgment on the pleadings already had successfully argued that the decedent's wife was not his "surviving spouse" under section 768.21(2) of the Wrongful Death Act. *See* § 768.21(2), Fla. Stat. (2015) ("***The surviving spouse*** may also recover for loss of the decedent's companionship and protection and for mental pain and suffering from the date of injury.") (emphases added).

At the defendants' urging, the circuit court attempted to reconcile its inconsistent findings under sections 768.21(2) and 768.21(3) by describing the decedent's wife as his "surviving spouse, albeit a spouse who is herself barred from recovery pursuant to *Kelly*."

However, we conclude this was error. As the estate argued to the circuit court, the defendants engaged in an "irreconcilable contradiction" in arguing that the decedent's wife *was not* his "surviving spouse" under section 768.21(2) of the Act, while in the same breath, contending that the decedent's wife *was* his "surviving spouse" under section 768.21(3) of the Act, thus precluding the decedent's adult children from recovering damages under section 768.21(3) of the Act. As the estate further argued, the defendants' contradicting positions "cannot be harmonized."

In legal terms, we can best describe this situation as being most similar to the doctrine of judicial estoppel. "Judicial estoppel is an equitable doctrine that is used to prevent litigants from taking totally inconsistent positions in separate judicial … proceedings." *Blumberg v. USAA Cas. Ins. Co.*, 790 So. 2d 1061, 1066 (Fla. 2001) (citation omitted). Under Florida's judicial estoppel doctrine:

> A claim made or position taken in a former action or judicial proceeding will, in general, estop the party to make an

> inconsistent claim or to take a conflicting position in a subsequent action or judicial proceeding to the prejudice of the adverse party.
>
> In order to work an estoppel, the position assumed in the former trial must have been successfully maintained. In proceedings terminating in a judgment, the positions must be clearly inconsistent, the parties must be the same and the same questions must be involved.

*Id.* (citation omitted).

We recognize this case does not fit squarely within the Florida Supreme Court's description of judicial estoppel, because here the defendants took inconsistent positions in two dispositive motions within a single action or proceeding, rather than in separate actions or proceedings. *But see New Hampshire v. Maine*, 532 U.S. 742, 749, 121 S. Ct. 1808, 1814, 149 L. Ed. 2d 968 (2001) ("[J]udicial estoppel[] generally prevents a party from prevailing in ***one phase*** of a case on an argument and then relying on a contradictory argument to prevail in ***another phase***.") (emphases added; citations omitted); 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4477, p. 782 (1981) ("[A]bsent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory.").

However, we consider that distinction to be insignificant in this case, because the prejudicial effect is the same. Here, in the defendants' earlier-filed motion for judgment on the pleadings on the decedent's wife's damages claim, the defendants successfully took the position that the decedent's wife *was not* his "surviving spouse" under section 768.21(2) of the Wrongful Death Act, due to "the common-law rule that a party must have been legally married to the injured person at the time of the injury in order to assert a claim for loss of consortium." Thus, the defendants successfully maintained that the decedent's wife was not entitled to recover damages under section 768.21(2) of the Act.

Yet in the defendants' later-filed motion for summary judgment on the decedent's adult children's damages claim, the defendants took the totally inconsistent position that the decedent's wife *was* his "surviving spouse" under section 768.21(3) of the Wrongful Death Act. This inconsistent position allowed the defendants to successfully maintain that the decedent's adult children were not entitled to recover damages under section 768.21(3) of the Act either.

19

Again, the defendants cannot engage in such an "irreconcilable contradiction." Their attempt to have the circuit court reconcile the contradiction by describing the decedent's wife as a "surviving spouse, albeit a spouse who is herself barred from recovery pursuant to *Kelly*," (emphasis added), essentially attempts to impermissibly rewrite section 768.21 by adding those words to the statute. This we cannot do. *See Westphal v. City of St. Petersburg*, 194 So. 3d 311, 313-14 (Fla. 2016) ("The judiciary … is without power to rewrite a plainly written statute ….."); *Hayes v. State*, 750 So. 2d 1, 4 (Fla. 1999) ("We are not at liberty to add words to statutes that were not placed there by the Legislature.").

### *Conclusion*

Based on the foregoing, we affirm the circuit court's order granting the defendants' motion for judgment on the pleadings as to the decedent's wife's damages claim based on *Kelly v. Georgia-Pacific, LLC*, 211 So. 3d 340 (Fla. 4th DCA 2017).

However, we reverse the circuit court's order granting the defendants' motion for summary judgment as to the decedent's adult children's alternative damages claim. As a matter of first impression, we agree with the estate that, if a spouse who had married the decedent after the decedent's injury is barred from recovering damages under section 768.21(2) of the Wrongful Death Act (per *Kelly*), then the decedent's surviving adult children may recover damages under section 768.21(3) of the Wrongful Death Act. To rule otherwise would contravene section 768.17, Florida Statutes (2012), providing, "It is the public policy of the state to shift the losses resulting when wrongful death occurs from the survivors of the decedent to the wrongdoer." § 768.17, Fla. Stat. (2015).

We certify conflict between *Kelly* and *Domino's Pizza, LLC v. Wiederhold*, 248 So. 3d 212 (Fla. 5th DCA 2018).

*Affirmed in part, reversed in part, conflict certified.*

CIKLIN and FORST, JJ., concur.
GERBER, J., concurs specially with an opinion.

GERBER, J., concurring specially.

I fully concur in the majority opinion. Specifically, I agree with our holding in *Kelly v. Georgia-Pacific, LLC*, 211 So. 3d 340 (Fla. 4th DCA 2017), that under the principles of *Thornber v. City of Fort Walton Beach*,

568 So. 2d 914 (Fla. 1990), no language within the Wrongful Death Act abrogates or supersedes the common law prohibition against "marrying into a cause of action" for loss of consortium. *See Thornber*, 568 So. 2d at 918 ("Unless a statute unequivocally states that it changes the common law, or is so repugnant to the common law that the two cannot coexist, the statute will not be held to have changed the common law.").

Thus, I disagree with the Fifth District's holding in *Domino's Pizza, LLC v. Wiederhold*, 248 So. 3d 212 (Fla. 5th DCA 2018), which interpreted the Wrongful Death Act without having conducted a *Thornber* analysis to determine whether the Wrongful Death Act abrogated or superseded the common law prohibition against "marrying into a cause of action" for loss of consortium. *Domino's* potentially opens a wide door to a future case in which a person, *not necessarily involved in a relationship of love and affection with the injured person,* is permitted to "marry into a cause of action" simply by marrying the injured person before the injured person's death, and thereby become the decedent's "surviving spouse" in order to recover damages under section 768.21(2), Florida Statutes (2015).

I write separately, however, to elaborate that *Kelly*, though correctly decided on the law, serves as an unfortunate factual application of the common law prohibition against "marrying into a cause of action." In *Kelly*, we held, in pertinent part:

> [T]he Florida Wrongful Death Act does not clearly or explicitly abrogate or overturn the common law requirement that the decedent and surviving spouse be married prior to the date of injury to recover consortium damages. ***Although there may be persuasive policy reasons for superseding this common law rule, especially in the present case where the injury is latent, such a change may come only from the legislature by statutory enactment.***

*Id.* at 347 (emphases added; internal footnote omitted).

I recognize *Kelly* properly characterized the decedent's injury in that case as having occurred at the time of his asbestos exposure in 1973 or 1974. *See id.* at 344 (citing *Am. Optical Corp. v. Spiewak*, 73 So. 3d 120, 129 (Fla. 2011) ("Here, a foreign substance—asbestos fibers—were inhaled and became embedded in the lungs of the plaintiffs without their knowledge or consent. ***This ... constitutes an actual injury*** that has been inflicted upon the bodies of the plaintiffs.")) (emphases added).

Yet, in *Kelly*, after the decedent got married in 1976, he and his wife enjoyed a nearly forty-year marriage until, in 2014, he was diagnosed with mesothelioma and died the following year.  211 So. 3d at 342.  Because the decedent's injury was latent for decades, nothing within *Kelly*'s facts would suggest that the decedent's wife, nearly forty years earlier, had "married into a cause of action."  Yet the common law prohibition against "marrying into a cause of action" – requiring that a spouse be married to the injured person ***at the time of the injury*** for the spouse to bring a loss of consortium claim – dictated *Kelly*'s unfortunate consequence.

I doubt the common law prohibition against "marrying into a cause of action" was developed with the understanding that such an unfortunate consequence would occur in *Kelly* or in any other case in which a pre-marriage latent injury does not manifest itself until long after a marriage founded on "that affection, solace, comfort, companionship, conjugal life, fellowship, society and assistance so necessary to a successful marriage" has been fulfilled.  *Id.* at 344 (quoting *Gates v. Foley*, 247 So. 2d 40, 43 (Fla. 1971)).  However, as we indicated in *Kelly*, any attempt to avoid such an unfortunate consequence may come from the legislature only.

*        *        *

**Not final until disposition of timely filed motion for rehearing.**